**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| BETTY WILSON, LINDA WICK, and SUSAN COLBERT, on behalf of themselves and others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) | CIVIL ACTION NO. 2:14-CV-00105-RWS |
| REGIONS FINANCIAL CORPORATION and REGIONS BANK, | ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION FOR
CONDITIONAL CERTIFICATION, NOTICE, AND DISCLOSURE**

On July 28, 2014, plaintiffs filed their Second Amended Complaint ("SAC") against defendant Regions Financial Corporation ("RFC") and defendant Regions Bank (collectively, the "defendants"). Doc. 13. The SAC includes collective-action claims for unpaid overtime under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.,* on behalf of plaintiffs and all similarly situated employees. Doc. 13 ¶¶ 1-69, 121-130.

Plaintiffs now move, pursuant to 29 U.S.C. § 216(b), that the Court conditionally certify their overtime claims as a collective action and approve plaintiffs' issuance of their proposed form of notice to the class based on identifying information supplied by the defendants. Plaintiffs seek to

represent similarly situated employees whom defendants employed at its Gainesville, Georgia Mortgage Operations Center (the "Gainesville MOC") and performed the primary job duties, regardless of classification, seniority, or type of loan, of any of the following jobs:  (a) a mortgage processor, (b) a mortgage underwriter, or (c) a mortgage closer.  The proposed class period covers the three-year period preceding the notice mailing date.

### *SUMMARY OF THE REASONS TO CERTIFY*

Defendants systematically cheated plaintiffs and the putative class out of their proper overtime compensation.  The heart of defendants' scheme was cutting labor costs to increase the cash available for dividends to stockholders and debt-service payments to bondholders.

All three plaintiffs and the three consenting opt-ins (collectively, "plaintiffs") have been employed by defendants at the Gainesville MOC. Plaintiffs performed the primary job duties of a mortgage processor, a mortgage underwriter, or a mortgage closer (collectively, the "MOC Mortgage Jobs") and were compensated on an hourly rate basis.  Plaintiffs worked for the same Gainesville MOC manager.  And defendant willfully underpaid plaintiffs' overtime compensation.

Like plaintiffs, the Gainesville MOC employees in the MOC Mortgage Jobs:  (a) were compensated on an hourly rate basis; (b) performed the same or similar job duties for each respective job; (c) routinely had to work more

than 40 hours in a workweek to complete their assignments; and (d) shared the same Gainesville MOC manager.  And, as with plaintiffs, defendants willfully underpaid the other employees' overtime compensation.

Defendants willfully engaged in the following unlawful FLSA practices against plaintiffs and putative class members:

(a)     Understating regular rates of pay by intentionally excluding non-discretionary production bonus payments from the pay-rate calculation used to compute whatever overtime was paid—thus cutting the overtime compensation paid to employees;

(b)     Falsifying time records by altering clock-in and clock-out times—thus cutting the true number of hours in the time system compensable as overtime for employees;

(c)     Requiring off-the-clock work to complete assignments but not paying employees for that time—despite the immutable documentary proof in defendants' files proving the work; and

(d)     Paying overtime for some but not all of the hours worked in excess of 40 in a workweek.

So defendants not only cheated plaintiffs and the class out of overtime due on all hours worked in excess of 40 in a workweek.  Defendants compounded their cheating by *understating* the regular rates of pay for plaintiffs' and the class to cheat them out of even more overtime.  And by doing so, defendants diverted cash out of their employees' pockets to have more cash for shareholders and bondholders.

Based on the lenient stage-one standard for § 216(b) certification, plaintiffs' motion to certify should be granted and notice authorized for all putative class members.  A collective action will be the fairest and most judicially efficient means to address defendants' FLSA overtime violations.

### *STATEMENT OF FACTS*

**1.   Plaintiffs and the Putative Class Members Performed Similar Job Duties and Compensated on an Hourly Rate Basis**

Defendants have operated a mortgage operations center in Gainesville, Georgia, commonly called the MOC, since at least 2000 to the present. [Wilson Decl. ¶ 3; Nesmith Decl. ¶ 3.]  The name plaintiffs and three opt-in plaintiffs are all current or former employees at the MOC compensated on an hourly rate basis to work in the positions of mortgage processor, mortgage underwriter, or mortgage closer.  [Doc. 13 ¶¶ 16-20; Docs. 8, 12-1, 12-2; Wilson Decl. ¶ 6; Wick Decl. ¶ 6; Colbert Decl. ¶ 6; Nesmith Decl. ¶ 6.]  The IRS Form W-2 that defendants issued listed in the box requiring the "Employer's name" *both* "REGIONS FINANCIAL CORPORATION" and "REGIONS BANK."  [Wick Decl. ¶ 2; Colbert Decl. ¶ 2.]

Plaintiffs—and all other MOC employees in those same jobs—worked for the same Gainesville MOC manager.  [Wilson Decl. ¶ 30; Wick Decl. ¶ 30; Colbert Decl. ¶ 30; Nesmith Decl. ¶ 30.]  And plaintiffs worked in those jobs

within three years preceding the filing of this action.  [Wilson Decl. ¶ 19;

Wick Decl. ¶ 19; Colbert Decl. ¶ 19; Nesmith Decl. ¶ 19.]

All Gainesville MOC employees who worked as mortgage processors,

mortgage underwriters, or mortgage closers performed the same primary job

duties for each respective position.  [Wilson Decl. ¶¶ 8-13, 24-25; Wick Decl.

¶¶ 8, 10-11, 24; Colbert Decl. ¶¶ 9, 12-13, 25; Nesmith Decl. ¶¶ 9, 12, 25.]  So

for all mortgage processors, the primary job duties were:  (a) collecting

documentation related to mortgage applications; (b) submitting the

documentation to the appropriate individual with authority to underwrite

and approve the mortgage applications; and (c) using the telephone to contact

loan applicants residing in Georgia or other states in an effort to gather

information when necessary to facilitate the process of having their mortgage

applications ready for underwriting.  [Wilson Decl. ¶ 24.]

The primary job duties of all mortgage underwriters were:  (a)

analyzing mortgage applications to determine if the application should be

approved or denied based on criteria specified by REGIONS, or, in some

cases, suspended pending receipt of additional documentation from the

applicant; (b) approving, denying, and suspending mortgage applications

based on criteria specified by REGIONS; and (c) using the telephone to

contact loan officers and other individuals who resided in Georgia and in

other states in an effort to complete the compilation of information needed to

analyze mortgage applications.  [Wilson Decl. ¶ 25; Colbert Decl. ¶ 25; Nesmith Decl. ¶ 25.]

For all mortgage closers, the primary job duties were:  (a) preparing documentation related to mortgage closings; (b) submitting the closing documentation to the appropriate closing attorney or agent; (c) taking the appropriate steps to fund the loan on the day of closing; and (d) using the telephone to contact closing attorneys or other individuals who resided in Georgia or in other states in an effort to confirm that all necessary documents for the mortgage closings were received.  [Wick Decl. ¶ 24.]

All Gainesville MOC employees who worked as mortgage processors, mortgage underwriters, or mortgage closers were:  (a) compensated on an hourly rate basis; (b) non-exempt employees under the FLSA; and (c) eligible for—and often recipients of—a non-discretionary production bonus in some dollar amount for meeting pre-set production goals.  [Wilson Decl. ¶¶ 26-28; Wick Decl. ¶¶ 26-28; Colbert Decl. ¶¶ 26-28; Nesmith Decl. ¶ 29.]  And the similarities continue.

All Gainesville MOC employees who worked as mortgage processors, mortgage underwriters, or mortgage closers used the same electronic timekeeping system for clocking-in and clocking-out each day.  [Wilson Decl. ¶ 29; Wick Decl. ¶ 29; Colbert Decl. ¶ 29; Nesmith Decl. ¶ 29.]  Defendants relied on that very same electronic timekeeping system to calculate the

straight-time and overtime compensation for each workweek for all Gainesville MOC employees who worked as mortgage processors, mortgage underwriters, or mortgage closers.  [*Id.* (collective citation).]

All Gainesville MOC employees who worked as mortgage processors, mortgage underwriters, or mortgage closers also reported to the same MOC Mortgage Operations Manager.  [Wilson Decl. ¶ 30; Wick Decl. ¶ 30; Colbert Decl. ¶ 30; Nesmith Decl. ¶ 30.]  And all Gainesville MOC employees who worked as mortgage processors, mortgage underwriters, or mortgage closers were subject to the same policies and procedures.  [Wilson Decl. ¶ 32; Wick Decl. ¶ 32; Colbert Decl. ¶ 32; Nesmith Decl. ¶ 32.]

## 2.   Defendants Cheat Plaintiffs and the Putative Class Out of Their Proper Overtime Compensation Using the Same Unlawful Overtime Practices

During the past three years, defendants used a multi-pronged scheme to cheat plaintiffs and the putative class members out of the proper overtime compensation due them.  [Doc. 13 ¶ 57; Wilson Decl. ¶¶ 21, 31-32; Wick Decl. ¶¶ 21, 32; Colbert Decl. ¶¶ 21, 32; Nesmith Decl. ¶¶ 21, 31-32.]  Defendants' motive was classically simple:  Lower out-of-pocket labor costs by cheating employees on overtime, which thereby increases the cash available to pay dividends to shareholders and interest and principal to bondholders.  [Doc. 13 ¶¶ 14-15, 59.]

## A.

Plaintiffs and the putative class members routinely worked in excess of 40 hours in a workweek at various times during the past three years (and longer).  [Doc. 13 ¶ 51; Wilson Decl. ¶ 19; Wick Decl. ¶ 19; Colbert Decl. ¶ 19; Nesmith Decl. ¶ 19.]  Plaintiffs and the class members did so because defendants had an unofficial policy requiring them to work off-the-clock, whether during lunch breaks or before and after regular business hours, in order to complete their assignments.  [Doc. 13 ¶ 75; Wilson Decl. ¶ 22; Wick Decl. ¶ 22; Colbert Decl. ¶ 22; Nesmith Decl. ¶ 22.]

Defendants certainly knew or should have known that plaintiffs and the class were routinely working off-the-clock and piling up hours in excess of 40 in a workweek.  All this off-the-clock work time was plainly apparent in defendants' documents—including their electronically stored information—and done in plain sight of management.  [Doc. 13 ¶¶ 55, 58; Wilson Decl. ¶ 20; Wick Decl. ¶ 20; Colbert Decl. ¶ 20; Nesmith Decl. ¶ 20.]

Defendants did not stop there.  They systematically *excluded* the non-discretionary bonus payments paid to plaintiffs and the class members from the calculation of their regular rate of pay when computing overtime compensation paid—ensuring that out-of-pocket labor costs would be artificially depressed.  [Doc. 13 ¶¶ 52, 58-59; Wilson Decl. ¶ 23(a); Wick Decl. ¶ 23(a); Colbert Decl. ¶ 23(a); Nesmith Decl. ¶ 23(a).]  Defendants'

management also manipulated the timekeeping system to falsify the electronic time-records of plaintiffs and class members by altering clock-in or clock-out times, or both, in order to decrease the amount compensable hours actually worked.  [Doc. 13 ¶¶ 56, 58; Colbert Decl. ¶ 17; Nesmith Decl. ¶ 17.]

**B.**

To summarize, defendants systematically cheated on their FLSA overtime obligations to plaintiffs and the class to divert cash from employees to shareholders and bondholders through the following illegal activities:

(a)   Understating regular rates of pay by intentionally excluding non-discretionary production bonus payments from the pay-rate calculation used to compute whatever overtime was paid—thus cutting the overtime compensation paid to employees;

(b)   Falsifying time records by altering clock-in and clock-out times—thus cutting the true number of hours in the time system compensable as overtime for employees;

(c)   Requiring off-the-clock work to complete assignments but not paying employees for that time—despite the immutable documentary proof in defendants' files proving the work; and

(d)   Paying overtime for some but not all of the hours worked in excess of 40 in a workweek.

[Doc. 13 ¶ 58; *id*. ¶¶ 48-57; Wilson Decl. ¶¶ 19-23, 31-32; Wick Decl. ¶¶ 19-23, 32; Colbert Decl. ¶¶ 17, 19-23, 32; Nesmith Decl. ¶¶ 17, 19-23, 31-32.]

As a direct result of the foregoing illegal policies and practices, defendants did not pay plaintiffs their proper overtime compensation for all hours worked in excess of 40 in a work week at 1.5 times their correct regular

rate of pay.  [*Id.* (collective citation).]  Defendants also cheated the putative

class members out of their proper overtime compensation using the same

illegal policies and practices directed at plaintiffs.[1]  [*Id.* (collective citation).]

## *LEGAL ARGUMENT*

1.  **Plaintiffs Satisfy the Standard for Conditional Certification of Their FLSA Claims in a Collective Action Because the Plaintiffs and Putative Class are "Similarly Situated"**

### A.  *The Legal Standard for Conditional Certification*

#### (i)  **FLSA Liability**

The FLSA requires that employers engaged in interstate commerce

must pay non-exempt employees for all hours worked in excess of 40 per

week at one-and-a-half times their regular rate of pay.  *See* 29 U.S.C. §

207(a)(1).  An employee's regular pay rate includes both the hourly rate *plus*

any non-discretionary production bonus.  *See* 29 U.S.C. § 207(e); 29 C.F.R. §

778.110(a)(b).  Any employer that violates § 207(a)(1) is liable for all unpaid

---

[1] "[C]ourts regularly rely on plaintiffs' affidavits and *hearsay statements* in determining the propriety of sending notice."  *Salomon v. Adderley Indus.*, 847 F. Supp.2d 561, 563–64 (S.D.N.Y. 2012) (emphasis added).  In this district, Judges Totenberg and Jones have relied on hearsay to grant stage-one motions.  *Jewell v. Aaron's, Inc.*, 1:12-CV-0563, 2012 WL 2477039, at *6 n. 6 (N.D. Ga. June 28, 2012) (Totenberg, J.); *McCray v. Cellco Partnership*, 1:1-CV-2821, 2011 WL 2893061, at *3 (N.D. Ga. April 8, 2011) (Jones, J.).

Here, two of plaintiffs' supporting declarations include the hearsay statements of putative class members describing how defendants did not pay them the proper overtime using practices that also victimized plaintiffs.  *See* Wilson Decl. ¶ 31; Nesmith Decl. ¶ 31.  This evidence properly supports conditional certification.  *Jewell*, 2012 WL 2477039, at *6 n. 6; *McCray*, 2011 WL 2893061, at *3; *accord Salomon*, 847 F. Supp.2d at 563-64.

overtime compensation plus an equal amount as liquidated damages.  *See* 29 U.S.C. § 216(b).  The statute of limitations for an FLSA overtime violation is usually two years.  *See* 29 U.S.C. § 255(a).  But when an employer willfully violates the FLSA, the statute of limitations becomes three years.  *Id.*

Under 29 U.S.C. § 216(b), employees may pursue an employer's FLSA violations through a collective action into which other current or former employees may "opt in" by filing a written consent to join.  *Anderson v. Cagle's, Inc.,* 488 F.3d 945, 952 (11th Cir. 2007).  Collective FLSA actions are most suitable when they trigger the "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity" of the employer.  *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

If a collective class is conditionally certified, putative class members are then sent court-approved notice of the action and provided an opportunity to "opt-in."  *Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1218 (11th Cir. 2001).  At that point, discovery then proceeds focused just on the issues justifying conditional certification.  *See id.*

### (ii) **Stage-One Certification**

#### (a)

The Eleventh Circuit applies a two-stage approach for the § 216(b) collective-action certification process.  At stage one—the "notice" stage—the court determines if the proposed class members (i) are similarly situated in

their job duties and pay provisions, and (ii) desire to opt-in. *Anderson,* 488 F.3d at 952-53. The second stage occurs after class-wide discovery when the employer files a motion to de-certify based on these same factors. *Id.*

At stage one, plaintiffs bear the burden to show they are "similarly situated" with a group of other employees with respect to the complaint's allegations that the law has been violated. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096-97 (11th Cir. 1995). This burden is a "fairly lenient" one, however, because the motion comes at the early stages of a case when the parties—and the Court—have minimal evidence. *Hipp,* 252 F.3d at 1218. The lenient stage-one burden may be satisfied based just on the pleadings and supporting declarations. *Anderson,* 488 F.3d at 952-53. And application of the lenient stage-one standard typically results in "conditional certification" of the class. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008).

In the Eleventh Circuit, a plaintiff may establish being similarly situated to a proposed class either of two ways. One is to show the defendant-employer engaged in a "unified policy, plan, or scheme" of FLSA violations. *Grayson,* 79 F.3d at 1095. The other—because the burden is "elastic" at stage one—is showing the positions of the plaintiff and proposed class members are just similar, *not* identical, with respect to the nature of the alleged violations as applied to their job requirements and pay provisions.

- 12 -

*Reece v. United Home Care of N. Atlanta, Inc.*, No. 1:12-CV-2070-RWS, 2013 WL 895088, *2 (N.D. Ga. March 8, 2013) (Story, J.) (citations omitted).

Variations, as this Court has held, in specific job duties, supervisors, working hours, individual defenses, or damage calculations are *not* considered at the notice stage and will *not* defeat conditional certification.[2] *Id.*; *see Adams v. Inter-Con Sec. Sys., Inc.,* 242 F.R.D. 530, 537 (N.D. Cal. 2007) (individualized damage calculations are "irrelevant in considering conditional certification").  Nor are credibility attacks on a plaintiff's supporting declarations:

> [a]t the notice stage, . . . the Court need not engage in credibility determinations; instead the Court must determine only whether Plaintiff has presented sufficient—not factually correct—evidence that the putative class members and Plaintiff are "similarly situated."

*Reece*, 2013 WL 895088, at *4 (brackets in original; quotation omitted).

### (b)

In *Jewell v. Aaron's, Inc.,* 1:12-CV-0563-AT, 2012 WL 2477039 (N.D. Ga. June 28, 2012), Judge Totenberg granted nationwide conditional certification for a class of employees seeking unpaid overtime who had

---

[2] Plaintiffs' SAC alleges that defendants RFC and Regions Bank was each the "employer" of plaintiffs and the putative class.  Doc. 13 ¶¶ 24-29.  The SAC alternatively alleges that defendant RFC was their "joint employer." Doc. 13 ¶ 30.  This Court has said before, however, "determining whether a defendant is a joint employer for purposes of FLSA liability *is not appropriate* at the notice stage for conditional certification."  *Reece*, 2013 WL 895088, at *5 (Story, J.) (emphasis added).

similar duties and were subject to comparable compensation practices. *Id.* at
*1, *6.  Judge Totenberg forcefully rejected the defendant's argument that
because the class members worked for different managers in different
locations and had individualized factual claims, they were not similarly
situated. *Id.* at *7-*8.  Such an objection was insufficient to prevent a finding
that the named plaintiff and putative class were similarly situated:

> At the notice/conditional certification stage, the Court does not
> determine the legality of Defendant's practice or evaluate the merits of
> plaintiff's claim, but only determines whether the plaintiff has shown
> that he is similarly situated to the putative class members with respect
> to the nature of the alleged violations.

*Id.* at *5.

Also, Judge Julie Carnes granted conditional certification, disregarding
the usual class-wide variations that employers slavishly cite at the notice
stage. *Lawson v. Bell South Tel., Inc.,* No. 1:09-CV-3528, 2011 WL 3608462
(N.D. Ga. Aug. 16, 2011).  In *Lawson,* Judge Carnes held that differences in
job duties, geographic locations, and supervisors did not prevent certification
of employees in nine states. *Id.* at *7-*10.  Judge Carnes granted certification
because the plaintiff demonstrated that the putative class of employees had
similar duties and were subject to comparable compensation practices. *Id.*

In short, the stage-one inquiry focuses on the *similarity* of the
plaintiff's job and those of the putative class members, regardless of
variations among supervisors, job duties, defenses, or damage calculations.

*Reece*, 2013 WL 895088, at *2-*3 (Story, J.); *Riddle v. SunTrust Bank*, No. 1:08-CV-1411-RWS, 2009 WL 3148768 (N.D. Ga. Sept. 29, 2009) (Story, J.) (granting conditional certification irrespective of alleged variations in job duties, locations, hours, or potential defenses).  Applying that test here shows that conditional certification and notice should be granted.

**B.  *Plaintiffs Are Similarly Situated to the Putative Class Because They Shared the Same Respective Job Duties, Were Subject to the Same Pay Provisions, Suffered the Same Unlawful Compensation Practices, and Desire to Opt-In***

Plaintiffs and all putative class members (i) performed the same or similar job duties, respectively, for the three positions at the Gainesville MOC at issue, and (ii) were all subject to essentially the same pay provisions. They were all subjected to the same illegal overtime-underpayment and overtime-nonpayment scheme and practices.  And the three existing opt-ins prove that putative class members desire to join this action.  Because there is substantial evidence of common practices affecting employees with the same respective job duties and pay provisions, along with a proven desire of opt-ins to join this action, stage-one certification is appropriate here.

### (i) Legal Authorities

In *Alexander v. Cydcor, Inc.*, No. 1:11-CV-01578-SCJ, 2012 WL 1142449 (N.D. Ga. April 6, 2012), Judge Jones conditionally certified a class of employees subjected to unlawful FLSA practices like those at issue here.  The

*Cydcor* plaintiffs alleged that the defendant used what it knew was false information that the defendant itself caused to be put in the employees' time records to cheat them of their proper overtime compensation. *Id*. at *1, *4. Judge Jones granted conditional certification because the plaintiffs and putative class members were similarly situated with respect to their respective job duties and pay provisions and they were all subjected to similar unlawful pay practices. *Id*. at *4.

In *Jewell*, 2012 WL 2477039—another case involving FLSA violations like those alleged here—Judge Totenberg granted conditional certification. The court held that the plaintiffs and the class were employees compensated based on an hourly rate, they held similar positions, and the defendant required them to work off-the-clock without compensating them for the overtime worked. Stage-one certification was granted. *Id*. at *6.

In yet another comparable stage-one case, Judge Duffey granted conditional certification in *Kreher v. City of Atlanta*, No. 1:04-CV-2651-WSD, 2006 WL 739572 (N.D. Ga. March 20, 2006). Judge Duffey determined that the plaintiffs and proposed class shared similar positions and pay provisions and were also—as in this case—subjected to a comparable, unlawful pay practice of working off-the-clock while not being paid for their time. Conditional certification was therefore proper. *Id*. at *3-*4.

### (ii)  Plaintiffs and the Class are Similarly Situated

The SAC's allegations and plaintiffs' supporting declarations prove that both the named plaintiffs and opt-ins plaintiffs are similarly situated to each other and to the proposed class.[3]  The record also confirms that similarly situated individuals desire to join this action.  Conditional certification should therefore be granted and notice to the class ordered

All plaintiffs and opt-ins are or were employed at the Gainesville MOC by defendants.  Both plaintiffs and the class members had the same pay provisions—*viz.*, compensation on an hourly rate basis with non-discretionary production-bonus payments.  Plaintiffs had the same respective primary job duties as those employees in the positions of mortgage processor, mortgage underwriter, and mortgage closer.  They all were classified as non-exempt.  They all used the same timekeeping system to clock-in and clock-out each day.  They all were subject to the same policies and procedures.  They all were cheated via the same unlawful compensation practices that resulted in defendants refusing to pay them the proper compensation for all the overtime hours worked in excess of 40 in a workweek.  And plaintiffs and the putative class all reported to the *same* Gainesville MOC manager.[4]

---

[3] At stage one, plaintiffs' allegations and supporting declaration testimony must be taken as true.  *Reece*, 2013 WL 895088, at *4 (Story, J.).

[4] Although plaintiffs worked under different supervisors, that fact will not defeat conditional certification.  *Reece*, 2013 WL 895088, at *2.

Under the lenient standard for the stage-one analysis, plaintiffs'
evidence is more than sufficient to satisfy the "similarly situated"
requirement for conditional certification. *Reece*, 2013 WL 895088, at *2-*4
(Story, J.) (certifying a class of employees with similar positions compensated
in part on an hourly rate basis and subjected to comparable practices denying
them overtime); *Riddle*, 2009 WL 3148768, at *2-*3 (Story, J.) (certifying a
class of employees with similar job duties and pay provisions subjected to the
common practice of not receiving overtime pay). *Accord Burks v. Equity
Group Eufaula Div. LLC*, No. 2:06-CV-1081, 2007 WL 3125111, at *2 (M.D.
Ala. Oct. 24, 2007) (certifying a class of employees who worked at the same
location, with the same or similar job duties, subjected to the same
compensation practices, system, and who sought FLSA damages pursuant to
the same legal theory).

### (iii) <u>Other Employees Desire to Opt-in</u>

Plaintiffs also satisfy the stage-one requirement that other employees
desire to opt-in to this case. The threshold number for satisfying this factor
is not high. This Court has granted certification based on the filing of only
two opt-in consents prior to the issuance of class-wide notice. *Reece*, 2013 WL
895088, at *4 (Story, J.) (two opt-ins is sufficient); *Riddle,* 2009 WL 3148768,
at *3 (Story, J.) (three opt-ins is sufficient).

Here, plaintiffs have already filed three opt-ins' consents to join this action.  Docs. 8, 12-1, 12-2.  There are now a total of six plaintiffs—three named plaintiffs and three opt-in plaintiffs—who are all similarly situated in terms of their jobs and pay provisions who want to prosecute overtime claims against defendants based on the same legal theory arising out of the same unlawful practices at the Gainesville MOC.

The three opt-ins' consents confirm that a sufficient interest exists by other employees in this lawsuit to satisfy the requirements for conditional certification.  *Reece*, 2013 WL 895088, at *4; *Riddle,* 2009 WL 3148768, at *3. An order of certification and notice to the class should therefore be granted.

### C.  *Fairness and Judicial Efficiency Favor Conditional Certification and Notice to the Class*

The FLSA is designed to be a remedial statute and "should be given a broad reading, in favor of coverage."  *Pendlebury v. Starbucks Coffee Co.,* 518 F. Supp.2d 1345, 1363 (S.D. Fla. 2007).  Collective actions under § 216(b) are designed to help reduce the costs to individual plaintiffs through the pooling of resources and to promote judicial efficiency by resolving many claims in one proceeding that involve common issues of law and fact.  *Id.*; *Riddle*, 2009 WL 3148768, at *4.  A court must therefore balance these benefits against any potential detriment to the defendant and the potential for judicial

inefficiency that could result from collective treatment.  *Pendlebury*, 518 F. Supp.2d at 1363.

Here, weighing all these factors strongly favors certification.  The evidence shows that the potential class is composed of individuals whom defendants employed at a single location—the Gainesville MOC—here in the Northern District.  Until court-approved notice is issued, however, the exact number of individuals who desire to participate in this action will remain unknown.  After the size and identity of the opt-in class is determined and targeted discovery commenced, the parties will need to calculate the value of the participants' damages.  Some individuals may have worked for only a few months and others for far longer.

Granting conditional certification here thus addresses the practical concern raised by this Court in *Bradford v. Bed Bath and Beyond*, 184 F. Supp.2d 1342, 1351 (N.D. Ga. 2002) (Story, J.).  Specifically, plaintiff-opt-ins with relatively limited damages may exist, and—as this Court rightly recognized—they can "hardly be expected to pursue these small claims individually, so there is little likelihood that their rights will be vindicated in the absence of a collective action."  *Id.*

As a further practical matter, it is very unlikely that the benefit and efficiencies of litigating potentially dozens of individual claims through a collective action can be outweighed by any detriment to the defendants:

> Because the plaintiffs' assertions about the defendant's purportedly improper time-keeping and pay practices play a predominant role in each of their claims, any requirement that each plaintiff prove his or her claims individually would waste more judicial time and resources than trying their cases individually would preserve.

*Wilks v. Pep Boys*, No. 3:02-CV-0837, 2006 WL 2821700, *8 (M.D. Tenn. Sept. 26, 2006).  Nor would any inefficiencies that might attend the collective treatment of the claims here outweigh stage-one certification.  *See id.*

### D. *The Court Should Conditionally Certify the Proposed Class for a Period Covering the Past Three Years*

Based on the lenient standard applicable at stage one, plaintiffs' allegations in the SAC and supporting declarations sufficiently show that defendants acted willfully.  Thus, stage-one certification of the proposed class should cover a three-year limitations period.  *See* 29 U.S.C. § 255(a) (if an employer willfully violates the FLSA, the statute of limitations is three years).  The class period would cover the three-year period preceding the date that notices are mailed to the putative class.

A proposed opt-in notice has been filed with plaintiffs' motion to certify. [Ex. A.]  A proposed consent form has also been concurrently filed.  [Ex. B.]

Plaintiffs also propose that the Notice Packet sent to class members contain a postage-paid return envelope pre-addressed to plaintiffs' counsel. *Alexander*, 2012 WL 1142449, at *9 (directing that the notice packet to class members include a self-addressed, postage-paid return envelope).  Plaintiffs'

further purpose that the front of the envelope containing the Notice Packet

addressed to putative class members state the following language to alert

recipients that the envelope is not "junk mail":

<u>***LEGAL NOTICE***</u>**:**

**UNPAID OVERTIME LAWSUIT AGAINST:**
<u>**REGIONS BANK and REGIONS FINANCIAL SERVICES**</u>

- You could get more overtime pay for some of
  the hours you worked as an employee at
  the Mortgage Operations Center
  in Gainesville, Georgia.
- Your prompt attention is required.

[Ex. C.]

Courts have consistently approved language similar to plaintiffs'

proposal here. *E.g., Graham v. Overland Solutions, Inc.*, No. 10-CV-0672,

2012 WL 4009547, at *11 (S.D. Cal. Sept. 12, 2012) (approving, "Important

Legal Document. If you were employed by Overland Solutions, Inc., as a

Premium Audit Field Representative in California during the relevant time

period, you may be entitled to recover money from a Class Action Settlement.

Your Prompt Attention is Required."); *Putnam v. Galaxy 1 Mktg., Inc.*, 276

F.R.D. 264, 276-77 (S.D. Iowa 2011) (approving, "Court Authorized Notice of

Unpaid Overtime Lawsuit. Deadline to Join."); *Gandhi v. Dell Inc.*, No. 1:08-

CV-248, 2009 WL 3427218, at *3-*4 (W.D. Tex. Oct. 20, 2009) (approving,

"Court Authorized Notice of Unpaid Overtime Lawsuit Against Dell.

Deadline to Join.").

**2. Defendants Should Be Ordered to Disclose the Names and Addresses of All Putative Class Members for the Last Three Years**

To facilitate prompt notice, and—equally important—to access potentially critical testimony, defendants should be ordered to produce the names and addresses of all putative class members who worked for defendants in a readily useable electronic format. *Hoffman-LaRoche*, 493 U.S. at 170 (a defendant should provide the names and addresses of class members in collective actions). The production should occur within 20 days of the Court's order granting conditional certification. *See id*.

Defendants should also be ordered to supply the last four digits of the social security numbers for all putative class members. The purpose of having this information is to assist in locating individuals within the time allowed in the Court's authorized notice in the event the notice is returned as undeliverable or an employee's address is unavailable.

## CONCLUSION

Under the lenient standard used for stage-one certification motions, plaintiffs have sufficiently shown that they, the three opt-in plaintiffs, and the putative class are all similarly situated. Plaintiffs and the putative class had the same respective job duties, were all paid the same way, were all subject to the same policies and procedures, all worked in the same location, and all reported to the same manager.

Also, they were all subject to the same illegal compensation practices at issue in this action, by which defendants cheated them out of their proper overtime compensation.  Plaintiffs plus the putative class seek damages for the identical injuries under the identical facts and legal theory.  And other employees desire to opt-in this action.  Based on the foregoing, conditional certification should be granted and notice issued to the class.

<div style="margin-left:40%">

Respectfully submitted,

**/s/ *Marc N. Garber***     
MARC GARBER
Georgia Bar No. 283847
ALAN H. GARBER
Georgia Bar No. 283840
THE GARBER LAW FIRM, PC
4994 Lower Roswell Rd Ste 14
Marietta, GA 30068-5648
Tel:  (678) 560-6685
Fax: (678) 560-5067
ahgarber@garberlaw.net
mngarber@garberlaw.net

Jack Rosenberg
Georgia Bar No. 614475
5424 Glenridge Dr. Ste 53
Atlanta, GA 30342
Tel:  (404) 343-1091
Fax: (404) 343-1497
jackrosenberg2@gmail.com

***Counsel for the Plaintiffs and the Putative Class***

</div>

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on August 7, 2014, the foregoing motion was filed with the Clerk using the Court's CM/ECF filing system, which will serve a copy on all counsel of record.

<u>/s/ ***Marc N. Garber***</u>
MARC GARBER