**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| BETTY WILSON, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 2:14-CV-0105-RWS |
| REGIONS FINANCIAL | ) | |
| CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR**
**<u>RENEWED MOTION FOR CONDITIONAL CERTIFICATION</u>**

Plaintiffs' Third Amended Complaint ("TAC") alleges identical FLSA collective-action overtime claims for themselves and a class composed of *three* sub-classes of similarly situated current and former mortgage loan-related operations employees in Georgia and other states against defendants Regions Financial Corporation and Regions Bank.  The proposed class period covers the three years preceding a court-approved notice's mailing date.

Plaintiffs now move that the Court:  (a) conditionally certify their overtime claims for each of the three sub-classes; (b) approve the issuance of plaintiffs' proposed form of notice to all members of the three sub-classes; and (c) order that defendants promptly supply plaintiffs with the identifying information for all putative sub-class members so notice can be expeditiously issued.  For the reasons that follow, plaintiffs' motion should be granted.

### *SUMMARY OF THE REASONS TO CERTIFY*

In the three years preceding this action, defendants employed the three name plaintiffs and the three consenting opt-ins (collectively, "plaintiffs") in Georgia at one of defendants' mortgage loan-related operations centers ("MOCs"). Plaintiffs performed the primary job duties of a mortgage processor, a mortgage underwriter, or a mortgage closer (collectively, the "Mortgage Jobs"). They were hourly rate employees eligible for and paid non-discretionary production bonuses. Defendants also had MOCs in other states—including Alabama, Indiana, Mississippi, and Tennessee—where their employees performed the same primary job duties of the Mortgage Jobs as plaintiffs (collectively, the "Mortgage Jobs Employees") and were compensated the same way as plaintiffs, including the production bonuses.

Plaintiffs worked overtime to complete their assigned tasks, as did other Mortgage Jobs Employees at defendants' MOCs in Georgia and in the other states. But defendants cheated plaintiffs and other Mortgage Jobs Employees out of their proper overtime using the same *three* schemes:

(i)     Excluding their non-discretionary bonus payments from the calculation of the regular rate of pay used to compute their overtime compensation (*All MOCs*);

(ii)    Requiring plaintiffs to work off-the-clock to complete their assigned tasks, then refusing to pay for all the resulting overtime hours actually worked (*Georgia MOCs only*); and

(iii)   Falsifying the actual clock-in or clock-out times, or both, to decrease their compensable overtime hours (*Georgia MOCs only*).

Plaintiffs and the proposed class members are thus all similarly situated.  And based on the lenient stage-one standard for conditional certification, plaintiffs' motion to certify should be granted and notice authorized for all putative class members of the following there sub-classes:

### *Sub-Class No. 1*

All Mortgage Jobs Employees in All MOCs—

Whose non-discretionary production bonus payments were excluded by defendants from the pay-rate calculation used to compute the putative members' overtime compensation, as proven by the defendants' own records.

### *Sub-Class No. 2*

All Mortgage Jobs Employees in Georgia MOCs—

Whom defendants did not pay all overtime compensation due from their off-the-clock hours worked to complete their assignments, as proven by the defendants' own records.

### *Sub-Class No. 3*

All Mortgage Jobs Employees in Georgia MOCs—

Whose time records defendants falsified by altering the putative members' clock-in and clock-out times in defendants' time system to decrease the employees' actual number of compensable overtime hours, as proven by the defendants' own records.

## *STATEMENT OF FACTS*

**1. Plaintiffs and the Class Members at All MOCs Had the Same Primary Job Duties, Were Compensated the Same Way, Including Non-Discretionary Production Bonuses, and Worked Overtime**

Since at least 2011 to the present, defendants have conducted mortgage loan-related operations at MOCs in several different states—including

Georgia, plus Alabama, Indiana, Mississippi, and Tennessee.[1] [Pls Appx 1 (MOCs Overtime Ledger); Colbert Decl ¶ 3; Nesmith Decl. ¶ 3; Wick Decl ¶ 3; Wilson Decl ¶ 3; Colbert Decl-II ¶ 4; Wick Decl-II ¶ 4; Wilson Decl-II ¶ 4.][2]

The name plaintiffs and three opt-in plaintiffs are all current or former employees of defendants who worked at defendants' Georgia MOCs.[3] [TAC ¶¶ 16-20; Docs. 8, 12-1, 12-2; Wilson Decl ¶ 6; Wick Decl ¶ 6; Colbert Decl ¶ 6; Nesmith Decl ¶ 6.] Defendants paid plaintiffs on hourly rate basis plus non-discretionary production bonuses to perform the primary job duties of mortgage processor, mortgage underwriter, or mortgage closer. [TAC ¶¶ 16-20; Docs. 8, 12-1, 12-2; Colbert Decl ¶¶ 6, 14, 18; Nesmith Decl ¶¶ 6, 14, 18; Wick Decl ¶¶ 6, 14, 18; Wilson Decl ¶¶ 6, 14, 18.] Plaintiffs worked in those jobs within three years preceding the filing of this action. [Colbert Decl ¶ 19; Nesmith Decl ¶ 19; Wick Decl ¶ 19; Wilson Decl ¶ 19.]

At all of defendants' MOCs, regardless of location, the mortgage processors, mortgage underwriters, and mortgage closers:

---

[1] Defendants' Mississippi MOCs also included the "Customer Retention Operations Center." [Pls Appx 1 (MOCs Overtime Ledger); Colbert Decl-II ¶ 4; Wick Decl-II ¶ 4; Wilson Decl-II ¶ 4.]

[2] "Pls Appx." refers to plaintiffs' Appendix of Documents filed in support of their motion to certify. [Doc. 45-5.] Plaintiffs' Appendix contains true and correct copies of 15 documents created by the defendants. [Colbert Decl-II ¶ 10; Wick Decl-II ¶ 10; Wilson Decl-II ¶ 10; MNGarber Decl ¶¶ 3-4.]

[3] On the yearly IRS Forms W-2 that defendants issued to plaintiffs, in the box asking the "Employer's name," defendants answered by listing **both** "REGIONS FINANCIAL CORPORATION" and "REGIONS BANK." [Pls Appx 19-21; Colbert Decl-II ¶¶ 3, 10; Wick Decl-II ¶¶ 3, 10; Wilson Decl-II ¶¶ 3, 10.]

(i)     Performed the same primary job duties for those jobs as plaintiffs did and were treated as having done so by defendants;

(ii)    Were compensated the same way as plaintiffs;

(iii)   Were eligible for non-discretionary production bonuses;

(iv)    Received their non-discretionary bonus payments through defendants' normal payroll process centrally administered in Birmingham, Alabama;

(v)     Had their compensation, including their overtime compensation, calculated and paid through defendants' normal payroll process which they centrally administered in Birmingham, Alabama; *and*

(vi)    Worked overtime.

[Pls Appx 1-15 (MOCs Overtime Ledger; Loan Process-Regions; Regions' Job Ads; Mortgage Jobs E'ees Head-to-Head Rankings); Colbert Decl ¶¶ 9, 12-13, 25; Nesmith Decl ¶¶ 9, 12, 25; Wick Decl ¶¶ 8, 10-11, 24; Wilson Decl ¶¶ 8-13, 24-25; Colbert Decl-II ¶¶ 5-9; Wick Decl-II ¶¶ 5-9; Wilson Decl-II ¶¶ 5-9.][4]

Defendants also routinely required their Mortgage Jobs Employees in one location to complete over-flow mortgage application files from other MOCs because, irrespective of geography, defendants required them to follow a uniform loan process.  [Wilson Decl-II ¶ 6.]  Defendants' own website even states that a uniform "Loan Process" applied to all mortgage applications, regardless of which MOCs' Mortgage Jobs Employees processed them.  [Pls Appx 2.]  And defendants

---

[4] Defendants admit in their joint Answer that all MOCs' mortgage processors, mortgage underwriters, and mortgage closers—irrespective of location—were, like plaintiffs, non-exempt hourly rate employees eligible for non-discretionary production bonuses.  TAC ¶¶ 97, 100, 103; Doc 44: Defs Jt Ans. ¶¶ 97, 100, 103.

routinely compared the performances of all employees in each Mortgage Jobs category, irrespective of location.  [Pls Appx 12-15 (Mortgage Jobs E'ees Head-to-Head Rankings); Colbert Decl-II ¶ 6; Wick Decl-II ¶ 6; Wilson Decl-II ¶ 6.]

For *mortgage processors* (regardless of location), the primary job duties were:  (a) collecting documentation related to mortgage applications; (b) submitting the documentation to the appropriate individual with authority to underwrite and approve the mortgage applications; and (c) using the telephone to contact loan applicants residing various states (including Georgia) in an effort to gather information when necessary to facilitate the process of having their mortgage applications ready for underwriting.  [Pls Appx 1-7, 12-15 (Loan Process-Regions; Regions' Mortg Processor Job Ads; Mortgage Jobs E'ees Head-to-Head Rankings); Wilson Decl ¶ 24; Colbert Decl-II ¶¶ 5-6; Wick Decl-II ¶¶ 5-6; Wilson Decl-II ¶¶ 5-6.]

For *mortgage underwriters* (regardless of location), the primary job duties were:  (a) analyzing mortgage applications to determine if the application should be approved or denied based on criteria specified by REGIONS, or, in some cases, suspended pending receipt of additional documentation from the applicant; (b) approving, denying, and suspending mortgage applications based on criteria specified by REGIONS; and (c) using the telephone to contact loan officers and other individuals who resided in Georgia and in other states in an effort to complete the compilation of

information needed to analyze mortgage applications.  [Pls Appx 1-3, 8-15

(Loan Process-Regions; Regions' Mortg Underwriter Job Ads; Mortgage Jobs

E'ees Head-to-Head Rankings); Colbert Decl ¶ 25; Nesmith Decl ¶ 25; Wilson

Decl ¶ 25; Colbert Decl-II ¶¶ 5-6; Wick Decl-II ¶¶ 5-6; Wilson Decl-II ¶¶ 5-6.]

For *mortgage closers* (regardless of location), the primary job duties

were:  (a) preparing documentation related to mortgage closings; (b)

submitting the closing documentation to the appropriate closing attorney or

agent; (c) taking the appropriate steps to fund the loan on the day of closing;

and (d) using the telephone to contact closing attorneys or other individuals

who resided in Georgia or in other states in an effort to confirm that all

necessary documents for the mortgage closings were received.  [Pls Appx 1-3,

12-15 (Loan Process-Regions; Mortgage Jobs E'ees Head-to-Head Rankings);

Wick Decl ¶ 24; Colbert Decl-II ¶¶ 5-6; Wick Decl-II ¶¶ 5-6; Wilson Decl-II ¶¶

5-6.]

## 2.  Additional Similarities between Plaintiffs and the Putative Class Members at the Georgia MOCs (*Sub-Class Nos. 2 &3*)

All of defendants' Mortgage Jobs Employees at their Georgia MOCs

used the same electronic timekeeping system for clocking-in and clocking-out

each day.  [Wick Decl ¶ 29; Wilson Decl ¶ 29; Colbert Decl ¶ 29; Nesmith Decl

¶ 29.]  Defendants relied on that very same electronic timekeeping system to

calculate the straight-time and overtime compensation for each workweek for

all Gainesville MOC employees who worked as mortgage processors, mortgage underwriters, or mortgage closers.[5]  [Id. (collective citation).]

### 3. Defendants Cheat Plaintiffs and the Putative Class Out of Their Proper Overtime Compensation Using the Same Unlawful Overtime Practices

During at least the three years preceding the filing of this action, defendants used a multi-pronged scheme to cheat plaintiffs and the putative class members out of the proper overtime compensation due them.  [TAC ¶ 122; Colbert Decl ¶¶ 21, 32; Nesmith Decl ¶¶ 21, 31-32; Wick Decl ¶¶ 21, 32 Wilson Decl ¶¶ 21, 31-32.]  Defendants' motive was simple:  Cut labor costs by cheating employees on overtime, thereby increasing the cash available to pay dividends to Regions' shareholders and interest and principal to Regions' bondholders.  [TAC ¶¶ 37-43, 123.]

### 3.A. Defendants Cheat Mortgage Jobs Employees at All MOCs on Their Overtime Compensation by Understating Their Regular Rate of Pay Used for Computing Their Overtime Payable

Plaintiffs and the putative class members—during the three years prior to this action (and longer)—routinely worked more than 40 hours in a workweek.  [TAC ¶ 115; Pls Appx 1 (MOCs Overtime Ledger); Colbert Decl ¶ 19; Nesmith Decl ¶ 19; Wick Decl ¶ 19; Wilson Decl ¶ 19.]  Also, plaintiffs and the class members were entitled to and often paid non-discretionary

---

[5] Also, all Mortgage Jobs Employees at defendants' Georgia MOCs—including plaintiffs—reported to the same MOCs Mortgage Operations Manager.  [Colbert Decl ¶ 30; Nesmith Decl ¶ 30; Wick Decl ¶ 30; Wilson Decl ¶ 30.]

production bonuses.  [Colbert Decl ¶¶ 18, 28; Wick Decl ¶¶ 18, 28; Wilson Decl ¶¶ 18, 28; Colbert Decl-II ¶ 7; Wick Decl-II ¶ 7; Wilson Decl-II ¶ 7.]

But defendants—using their centrally administered payroll process in Birmingham, Alabama—routinely *understated* the regular rate of pay used for computing the overtime compensation due to plaintiffs and the class members, thus making sure to *underpay* them every time.  [Colbert Decl ¶¶ 18, 23(a), 28; Wick Decl ¶¶ 18, 23(a), 28; Wilson Decl ¶¶ 18, 23(a), 28; Colbert Decl-II ¶¶ 8-9; Wick Decl-II ¶¶ 8-9; Wilson Decl-II ¶¶ 8-9.]  Defendants did so by systematically *excluding* the non-discretionary bonus payments paid to plaintiffs and the class members from the calculation of their regular rate of pay for overtime purposes—thereby artificially depressing defendants' out-of-pocket labor costs.  [TAC ¶¶ 122-123; Wilson Decl ¶ 23(a); Wick Decl ¶ 23(a); Colbert Decl ¶ 23(a); Nesmith Decl ¶ 23(a).]

### 3.B. *Defendants Further Cheat the Georgia MOCs' Mortgage Jobs Employees on Their Overtime Pay by Not Paying for Off-The-Clock Work and by Falsifying Their Time*

#### 3.B.i. Unpaid Off-The-Clock Time at the Georgia MOCs

During the past three years (and longer), plaintiffs and the putative class members at defendants Georgia MOCs routinely worked in excess of 40 hours in a workweek.  [TAC ¶ 115; Pls Appx 1 (MOCs Overtime Ledger); Wilson Decl ¶ 19; Wick Decl ¶ 19; Colbert Decl ¶ 19; Nesmith Decl ¶ 19.] Plaintiffs and the class members did so because defendants had a policy of

requiring them to work off-the-clock—whether during lunch breaks or before and after regular business hours—in order to complete their assignments. [TAC ¶¶ 117-119; Colbert Decl ¶ 22; Nesmith Decl ¶ 22; Wick Decl ¶ 22; Wilson Decl ¶ 22.]

Defendants certainly knew or should have known that plaintiffs and the class were routinely working off-the-clock and piling up hours in excess of 40 in a workweek.  All this off-the-clock work time was plainly apparent to defendants because their documents, including electronically stored information and data, reflected such activities.  [TAC ¶¶ 117-119; Colbert Decl ¶ 20; Nesmith Decl ¶ 20; Wick Decl ¶ 20; Wilson Decl ¶ 20.]

### 3.B.ii.  Falsified Time at the Georgia MOCs

Defendants' management also manipulated the data generated by the timekeeping system that all plaintiffs and class members used at the Georgia MOCs.  [TAC ¶ 120; Colbert Decl ¶ 17; Nesmith Decl ¶ 17.]  That is, defendants falsified the electronic time-records of plaintiffs and class members by altering clock-in or clock-out times, or both.  [Id. (collective citation).]  Defendants did so to decrease in the timekeeping system the amount compensable hours actually worked by plaintiffs and the class.  [Id. (collective citation).]

### 3.B.iii.   <u>Defendants' Overtime-Theft Scheme Recapitulated</u>

Defendants have systematically violated their FLSA overtime

obligations to plaintiffs and the putative class by using the following illegal

practices to divert cash from employees to shareholders and bondholders:

(i)     Understating regular rates of pay by intentionally excluding non-discretionary production bonus payments from the pay-rate calculation used to compute whatever overtime was paid—thus cutting the overtime compensation paid to employees;

(ii)    Falsifying time records by altering clock-in and clock-out times—thus cutting the true number of hours in the time system compensable as overtime for employees; and

(iii)   Requiring off-the-clock work to complete assignments but not paying employees for that time—despite the immutable documentary proof in defendants' files proving the work;

[TAC ¶¶ 108-122; Colbert Decl ¶¶ 17, 19-23, 32; Nesmith Decl ¶¶ 17, 19-23,

31-32; Wick Decl ¶¶ 19-23, 32; Wilson Decl ¶¶ 19-23, 31-32.]

## <u>*LEGAL ARGUMENT*</u>

1. **Plaintiffs Satisfy the Standard for Conditional Certification of Their FLSA Claims in a Collective Action Because Plaintiffs and Putative Class, Through Each Sub-Class, are "Similarly Situated"**

Plaintiffs and the putative class are all similarly situated.  They had

the same primary job duties and pay provisions.  They were victimized by the

same illegal overtime compensation practices (as delineated in the three sub-

classes).  They seek damages for the identical injuries under the identical

facts and legal theory.  Also, the three opt-in plaintiffs prove others have a desire to opt-in this action.  The class should be certified.

### 1.A.  _The Legal Standard for Conditional Certification_

### 1.A.i.  FLSA Liability Standard

The FLSA requires that employers engaged in interstate commerce must pay non-exempt employees for all hours worked in excess of 40 per week at one-and-a-half times their regular rate of pay.  <u>See</u> 29 U.S.C. § 207(a)(1).  An employee's regular pay rate includes the hourly rate _plus_ any non-discretionary production bonus.  <u>See</u> 29 U.S.C. § 207(e); 29 C.F.R. § 778.110(a)(b).  Any employer that violates § 207(a)(1) is liable for all unpaid overtime compensation plus an equal amount as liquidated damages.  _See_ 29 U.S.C. § 216(b).  The statute of limitations for an FLSA overtime violation is usually two years.  <u>See</u> 29 U.S.C. § 255(a).  But when an employer willfully violates the FLSA, the statute of limitations becomes three years.  <u>Id.</u>

### 1.A.ii.  Stage-One FLSA Certification Standard

Under 29 U.S.C. § 216(b), employees may pursue an employer's FLSA violations through a collective action into which other current or former employees may "opt in" by filing a written consent to join.  <u>Anderson v. Cagle's, Inc.,</u> 488 F.3d 945, 952 (11th Cir. 2007).  Collective FLSA actions are most suitable when they trigger the "efficient resolution in one proceeding of

common issues of law and fact arising from the same alleged . . . activity" of the employer.  Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165, 170 (1989).

If a collective class is conditionally certified, putative class members are then sent court-approved notice of the action and provided an opportunity to "opt-in."  Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1218 (11th Cir. 2001).  At that point, discovery then proceeds focused just on the issues justifying conditional certification.  See id.

The Eleventh Circuit applies a two-stage approach for the § 216(b) collective-action certification process.  At stage one—the "notice" stage—the court determines if the proposed class members (i) are similarly situated in their job duties and pay provisions, and (ii) desire to opt-in.  Anderson, 488 F.3d at 952-53.  The second stage occurs *after* class-wide discovery when the employer files a motion to de-certify based on these same factors.  Id.

At stage one, plaintiffs bear the burden to show they are "similarly situated" with a group of other employees with respect to the complaint's allegations that the law has been violated.  Grayson v. K Mart Corp., 79 F.3d 1086, 1096-97 (11th Cir. 1995).  This burden is a "fairly lenient" one, however, because the motion comes at the early stages of a case when the parties—and the Court—have minimal evidence.  Hipp, 252 F.3d at 1218.  The lenient stage-one burden may be satisfied based just on the pleadings and supporting declarations.  Anderson, 488 F.3d at 952-53.  And application

of the lenient stage-one standard typically results in "conditional certification" of the class.  Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1260 (11th Cir. 2008).

In the Eleventh Circuit, a plaintiff may establish being similarly situated to a proposed class either of two ways.  One is to show the defendant-employer engaged in a "unified policy, plan, or scheme" of FLSA violations.  Grayson, 79 F.3d at 1095.

The other—since the stage-one burden is "elastic"—is, as this Court has held, to show that the positions of the plaintiff and proposed class members are *similar* with respect to the nature of the alleged violations as applied to their job duties and pay provisions.  Reece v. United Home Care of N. Atlanta, Inc., No. 1:12-CV-2070-RWS, 2013 WL 895088, *2 (N.D. Ga. March 8, 2013) (Story, J.).  The positions of both do *not* have to be identical.  Id.

Thus, variations in specific job duties, supervisors, working hours, individual defenses, or damage calculations are *not* considered at the notice stage and will *not* defeat conditional certification.[6]  Id.; see Adams v. Inter-Con Sec. Sys., Inc., 242 F.R.D. 530, 537 (N.D. Cal. 2007) (individualized

---

[6] That plaintiffs assert each defendant was the "employer" of plaintiffs and the putative class and, alternatively, that defendant Regions Financial Corp. was their "joint employer" is no ground for denying certification.  [TAC ¶ 83 [TAC ¶¶ 71-82, 83.]  "[D]etermining whether a defendant is a joint employer for purposes of FLSA liability *is not appropriate* at the notice stage for conditional certification."  Reece, 2013 WL 895088, at *5 (Story, J.) (emphasis added).

- 14 -

damage calculations are "irrelevant in considering conditional certification").

Nor will credibility attacks on a plaintiff's evidence defeat certification:

> [a]t the notice stage, . . . the Court need not engage in credibility determinations; instead the Court must determine only whether Plaintiff has presented sufficient—not factually correct—evidence that the putative class members and Plaintiff are "similarly situated."

Reece, 2013 WL 895088, at *4 (brackets in original) (Story, J.)

In Jewell v. Aaron's, Inc., 1:12-CV-0563, 2012 WL 2477039 (N.D. Ga. June 28, 2012), Judge Totenberg granted nationwide conditional certification for a class of employees seeking unpaid overtime who had similar duties and were subject to comparable compensation practices.  Id. at *1, *6.  Judge Totenberg forcefully rejected the defendant's argument that because the class members worked for different managers in different locations and had individualized factual claims, they were not similarly situated.  Id. at *7-*8. Jewell thus held that the defendant's argument was insufficient to prevent a finding that the named plaintiff and putative class were similarly situated:

> At the notice/conditional certification stage, the Court does not determine the legality of Defendant's practice or evaluate the merits of plaintiff's claim, but only determines whether the plaintiff has shown that he is similarly situated to the putative class members with respect to the nature of the alleged violations.

Id. at *5.

Also, then-District Judge Julie Carnes granted conditional certification by rejecting the usual class-wide variations that employers slavishly cite at

the notice stage.  <u>Lawson v. Bell South Tel., Inc.,</u> No. 1:09-CV-3528, 2011 WL 3608462 (N.D. Ga. Aug. 16, 2011).  In <u>Lawson</u>, the court held that differences in geographic locations, job duties, or supervisors did not prevent certification of employees in nine states.  <u>Id.</u> at *7-*10.  Judge Carnes granted certification because the plaintiff demonstrated that the putative class of employees had similar duties and were subject to comparable compensation practices.  <u>Id.</u>

The stage-one inquiry thus focuses on the *similarity* of the plaintiff's job and those of the putative class members—irrespective of variations in geography, among supervisors, job duties, defenses, or damage calculations. <u>Reece</u>, 2013 WL 895088, at *2-*3 (Story, J.); <u>Riddle v. SunTrust Bank</u>, No. 1:08-CV-1411-RWS, 2009 WL 3148768 (N.D. Ga. Sept. 29, 2009) (Story, J.) (granting conditional certification irrespective of alleged variations in job duties, locations, hours, or potential defenses); <u>Lawson</u>, 2011 WL 3608462, at *7-10 (Carnes, J.).  Applying those principles here shows that conditional certification should be granted and notice authorized.

### 1.B.  *Plaintiffs and the Class are Similarly Situated Because They Shared the Same Job Duties and Pay Provisions, Were Victims of the Same Unlawful Practices, and Others Desire to Opt-In*

Plaintiffs and all putative class members in the three sub-classes:  (i) performed the same or similar job duties for the three positions, respectively, at all of defendants MOCs; and (ii) were all subject to the same pay

provisions.[7]  Plaintiffs and the putative class members at <u>all</u> MOCs were also subjected to the same illegal overtime scheme by defendants in which the calculation of their regular rates of pay did not include their bonus payments (*Sub-Class #1*).  And at defendants' Georgia MOCs, plaintiffs and all the putative class members were subjected to the same overtime-nonpayment scheme and practices based on defendants' non-payment for off-the-clock work (*Sub-Class #2*) and falsification of time records (*Sub-Class #3*).

The three existing opt-ins prove that putative class members desire to join this action.  Hence, because plaintiffs have presented substantial evidence of common practices affecting employees with the same respective job duties and pay provisions, and a proven desire of others to join this action, stage-one certification is appropriate here for all three sub-classes.[8]

### 1.B.i.  <u>The Relevant Legal Authorities Support Certification</u>

In <u>Alexander v. Cydcor, Inc.</u>, No. 1:11-CV-01578-SCJ, 2012 WL 1142449 (N.D. Ga. April 6, 2012), Judge Jones conditionally certified a class of employees subjected to unlawful FLSA practices like those at issue here.

---

[7] At stage one, plaintiffs' allegations and supporting declaration testimony must be taken as true.  <u>Reece</u>, 2013 WL 895088, at *4 (Story, J.).

[8] That the three opt-ins may have worked at only one of defendants' MOCs provides no basis for denying conditional certification as to *all* of the defendant's MOCs for Sub-Class No. 1.  This Court has held:  "Demonstrating interest from individuals in several facilities, states, or regions is <u>not</u> a requirement for conditional class certification.  Plaintiff must show that *others* desire to opt-in." <u>Reece</u>, 2013 WL 895088, at *4 (italics in original; underscore added) (Story, J.).

The <u>Cydcor</u> plaintiffs alleged that the defendant used what it knew was false information that the defendant itself caused to be put in the employees' time records to cheat them of their proper overtime compensation.  <u>Id.</u> at *1, *4. Judge Jones granted conditional certification because the plaintiffs and putative class members were similarly situated with respect to their respective job duties and pay provisions and they were all subjected to similar unlawful pay practices.  <u>Id.</u> at *4.

In <u>Jewell</u>, 2012 WL 2477039—another case involving FLSA violations like those alleged here—Judge Totenberg granted conditional certification. The court held that the plaintiffs and the class were employees compensated based on an hourly rate, they held similar positions, and the defendant required them to work off-the-clock without compensating them for the overtime worked.  Stage-one certification was granted.  <u>Id.</u> at *6.

In yet another comparable stage-one case, Judge Duffey granted conditional certification in <u>Kreher v. City of Atlanta</u>, No. 1:04-CV-2651-WSD, 2006 WL 739572 (N.D. Ga. March 20, 2006).  Judge Duffey determined that the plaintiffs and proposed class shared similar positions and pay provisions and were also—as in this case—subjected to a comparable, unlawful pay practice of working off-the-clock while not being paid for their time. Conditional certification was therefore proper.  <u>Id.</u> at *3-*4.

### 1.B.ii.  **Plaintiffs and the Class are Similarly Situated**

The TAC's allegations and plaintiffs' supporting declarations and evidence prove that the named plaintiffs and opt-ins plaintiffs are similarly situated to each other and to the proposed class of three sub-classes.  The record also proves that others similarly situated desire to join this action.  Conditional certification should be granted and notice to the class ordered

Defendants employed plaintiffs, the opt-ins, and putative class members as Mortgage Jobs Employees.  Plaintiffs and all the putative class members had the same pay provisions—*viz.*, compensation on an hourly rate basis plus non-discretionary production-bonus payments—and were classified as non-exempt.  Plaintiffs had the same respective primary job duties as those employees in the positions of mortgage processor, mortgage underwriter, and mortgage closer.  At the Georgia MOCs, they all used the same timekeeping system to clock-in and clock-out each day.  And defendants used the same illegal practices to cheat plaintiffs and the members of each putative sub-class out of their proper overtime compensation.

Under the lenient standard for the stage-one analysis, plaintiffs' evidence is more than sufficient to satisfy the "similarly situated" requirement for conditional certification.  <u>Reece</u>, 2013 WL 895088, at *2-*4 (Story, J.) (certifying a class of employees with similar positions compensated in part on an hourly rate basis and subjected to comparable practices denying

them overtime); Riddle, 2009 WL 3148768, at *2-*3 (Story, J.) (certifying a class of employees with similar job duties and pay provisions subjected to the common practice of not receiving overtime pay).  Accord Burks v. Equity Group Eufaula Div. LLC, No. 2:06-CV-1081, 2007 WL 3125111, at *2 (M.D. Ala. Oct. 24, 2007) (certifying a class of employees who worked at the same location, with the same or similar job duties, subjected to the same compensation practices, system, and who sought FLSA damages pursuant to the same legal theory).

### 1.B.iii.  Others in the Class Desire to Opt-in

Plaintiffs also satisfy the stage-one requirement that others desire to opt-in to this case.  The threshold number for satisfying this factor is not high.  This Court has granted certification based on the filing of only two opt-in consents prior to the issuance of class-wide notice.  Reece, 2013 WL 895088, at *4 (Story, J.) (two opt-ins is sufficient); Riddle, 2009 WL 3148768, at *3 (Story, J.) (three opt-ins is sufficient).

Here, three opt-ins have already filed consents to join the three name plaintiffs.  Docs. 8, 12-1, 12-2.  So at this early stage, six plaintiffs—all similarly situated in their jobs and pay provisions—want to prosecute overtime claims based on defendants' same unlawful practices at the MOCs. The three opt-ins' consents thus confirm that a sufficient interest in this action exists by others in satisfaction of the requirements for conditional

certification.  <u>Reece</u>, 2013 WL 895088, at *4; <u>Riddle</u>, 2009 WL 3148768, at *3.

An order of certification and notice to the class should therefore be granted.

### *1.C.  Fairness and Judicial Efficiency Favor Conditional Certification and Notice to the Class*

The FLSA is a remedial statute and "should be given a broad reading, in favor of coverage."  <u>Pendlebury v. Starbucks Coffee Co.</u>, 518 F. Supp.2d 1345, 1363 (S.D. Fla. 2007).  The purpose of § 216(b) collective actions is to help reduce the costs to individual plaintiffs by the pooling of resources and promote judicial efficiency by resolving many claims involving common issues of law and fact in one action.  <u>Id.</u>; <u>Riddle</u>, 2009 WL 3148768, at *4 (Story, J.).  A court must therefore balance these benefits against any potential detriment to the defendant and the potential for judicial inefficiency that could result from collective treatment.  <u>Pendlebury</u>, 518 F. Supp.2d at 1363.

Here, weighing all these factors strongly favors certification.  The evidence shows that the putative class, composed of three sub-classes, is constituted by individuals with the same respective primary job duties and compensation provisions whom defendants employed in the Northern District and elsewhere.  Until court-approved notice is issued, however, the exact number of individuals who desire to participate in this action will remain unknown.  After the size and identity of the opt-in class is determined and targeted discovery commenced, the parties will need to calculate the value of

the participants' damages.  Some individuals may have worked for only a few months and others for far longer.

Granting conditional certification here thus addresses the practical concern raised, by this Court, in <u>Bradford v. Bed Bath and Beyond</u>, 184 F. Supp.2d 1342, 1351 (N.D. Ga. 2002) (Story, J.).  The Court held that because opt-ins with relatively limited damages may exist, they can "hardly be expected to pursue these small claims individually, so there is little likelihood that their rights will be vindicated in the absence of a collective action."  <u>Id.</u>

As a further practical matter, it is very unlikely that the benefits and efficiencies of litigating potentially dozens of individual claims through a collective action can be outweighed by any detriment to the defendants:

> Because the plaintiffs' assertions about the defendant's purportedly improper time-keeping and pay practices play a predominant role in each of their claims, any requirement that each plaintiff prove his or her claims individually would waste more judicial time and resources than trying their cases individually would preserve.

<u>Wilks v. Pep Boys</u>, No. 3:02-CV-0837, 2006 WL 2821700, *8 (M.D. Tenn. Sept. 26, 2006).  Nor would any inefficiencies that might attend the collective treatment of the claims here outweigh stage-one certification.  <u>See</u> <u>id.</u>

### *1.D.  The Court Should Conditionally Certify the Proposed Class for a Period Covering the Past Three Years*

Based on the lenient stage-one standard, plaintiffs' allegations in the TAC and their supporting declarations and evidence sufficiently show at this

point that defendants acted willfully.  Thus, stage-one certification of the

proposed class should cover a three-year limitations period for willful

violations.  29 U.S.C. § 255(a) (if an employer willfully violates the FLSA, the

statute of limitations is three years).  The class period would cover the three-

year period preceding the date that notices are mailed to the putative class.

### *1.E.   The Court Should Approve Plaintiffs' Proposed Form of Notice, Opt-In Form, and Envelop Legend*

A proposed opt-in Notice has been filed with plaintiffs' motion to certify

[Pls Ex. A].  A proposed opt-in Consent Form has also been filed [Pls Ex. B].

Plaintiffs ask that the Notice Packet sent to all class members include a

postage-paid return envelope pre-addressed to plaintiffs' counsel, so consent

forms may be easily returned.  Alexander, 2012 WL 1142449, at *9.

Plaintiffs also request that the following legend appear on the front of

each envelope containing the Notice Packet to alert recipient-class members

that the envelope is not "junk mail" [Pls Ex. C]:

### ***LEGAL NOTICE*:**

**UNPAID OVERTIME LAWSUIT AGAINST:**
**REGIONS BANK and/or REGIONS FINANCIAL CORPORATION**

- You could get additional overtime pay
  for some of the hours you worked
- Your prompt attention is required.

Courts have consistently approved the use of comparable language to warn

putative class members against discarding the envelope.  See, e.g., Graham v.

Overland Solutions, Inc., No. 10-CV-0672, 2012 WL 4009547, at *11 (S.D.
Cal. Sept. 12, 2012); Putnam v. Galaxy 1 Mktg., Inc., 276 F.R.D. 264, 276-77
(S.D. Iowa 2011); Gandhi v. Dell Inc., No. 1:08-CV-248, 2009 WL 3427218, at
*3-*4 (W.D. Tex. Oct. 20, 2009).

## 2. Defendants Should Be Ordered to Disclose the Names and Addresses of All Putative Class Members for the Last Three Years

To facilitate prompt notice, and—equally important—to access
potentially critical testimony, defendants should be ordered to produce the
names and addresses of all putative class members who worked for
defendants in a readily useable electronic format. Hoffman-LaRoche, 493
U.S. at 170 (a defendant should provide the names and addresses of class
members in collective actions). The production should occur within 20 days of
the Court's order granting conditional certification. See id.

Defendants should also be ordered to supply the last four digits of the
social security numbers for all putative class members. The purpose of
having this information is to assist in locating individuals within the time
allowed in the Court's authorized notice in the event the notice is returned as
undeliverable or an employee's address is unavailable.

## CONCLUSION

Under the lenient standard used for stage-one certification motions,
plaintiffs have sufficiently shown that they and the putative class are all

similarly situated and that others desire to opt in this action.  Conditional certification should be granted and notice to the class authorized.

Respectfully submitted,

s/ Marc N. Garber
MARC N. GARBER
Georgia Bar No. 283847
ALAN H. GARBER
Georgia Bar No. 283840
THE GARBER LAW FIRM, PC
4994 Lower Roswell Rd Ste 14
Marietta, GA 30068-5648
Tel:  (678) 560-6685
Fax: (678) 560-5067
ahgarber@garberlaw.net
mngarber@garberlaw.net

Jack Rosenberg
Georgia Bar No. 614475
5424 Glenridge Dr. Ste 53
Atlanta, GA 30342
Tel:  (404) 343-1091
Fax: (404) 343-1497
jackrosenberg2@gmail.com

*Counsel for the Plaintiffs and the Putative Class*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on January 12, 2015, the foregoing motion was filed with the Clerk using the Court's CM/ECF filing system, which will serve a copy on all counsel of record.

s/ Marc N. Garber
MARC N. GARBER