## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

BETTY WILSON, LINDA WICK,    )
and SUSAN COLBERT, on behalf    )
of themselves and others similarly    )
situated,    )
    )
        Plaintiffs,    )
    )      CIVIL ACTION NO.
v.    )      2:14-CV-0105-RWS
    )
REGIONS FINANCIAL    )
CORPORATION and REGIONS    )
BANK,    )
    )
        Defendants.    )

## PARTIES' JOINT STATEMENT PURSUANT
## TO LR 23.1.C(2) REGARDING RESTRICTIONS ON
## COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS

The parties submit the following joint statement concerning their

positions regarding the imposition of restrictions on communications between

the parties or counsel and putative class members, pursuant to LR 23.1C(2).

1. **Need for the Court's Intervention:**

   ***PLAINTIFFS' VERSION:***

   ***\*\* Telephonic Hearing Requested \*\****

   LR 23.1.C(1) requires that all communications to putative class

members regarding a class action must be based on "a complete and balanced

presentation of the relevant facts."  Defendants now claim they have a

"policy" that required their employees to lodge contemporaneous internal complaints about incorrect pay and pursuant to which defendants must ***now*** investigate and take proper remedial action.[1]  See infra at 26.

So defendants want to interview all putative class members, using this phantom policy as a cudgel, to find out from them if they (a) assert they were not paid all for all their work, and (b) thereby admit violating a Regions policy.  The obvious implication for the currently employed class members would be that they could lose their jobs for not complaining to the very people who were falsifying their time.

Coercion of potential class members by the class opponent inherently exists in an employer-employee relationship.  Abdallah v. Coca-Cola Co., 186 F.R.D. 672, 678 (N.D. Ga. 1999) (Story, J.).  Thus, when an employer's communications to employee-class members pose the danger of "threaten[ing] the proper functioning of the litigation," the imposition of restrictions on such communications is appropriate.   Cox Nuclear Medicine v. Gold Cup Coffee Servs., Inc., 214 F.R.D. 696, 697–98 (S.D. Ala. 2003); E.E.O.C. v. Morgan Stanley & Co., 206 F.Supp.2d 559, 562 (S.D.N.Y. 2002).

---

[1] Plaintiffs will file declarations stating defendants never told them about any such "policy," nor did they ever see, hear, or know of any such policy.

Moreover, despite plaintiffs' requests, defense counsel has never supplied a copy of this alleged policy.  If a written policy even exists, it involves nothing remotely justifying confidential treatment—particularly given defendants' reliance on it.

Here, defendants want speak to putative class members on the pretext of whether they violated a (non-existent) policy.  Because of the threat of abuse inherent in defendants' inquiry, plaintiffs request that the Court hold a telephonic hearing to address the proper restrictions on defendants' communications with putative class members to protect the putative class from the risks inherent in the following:

(i)   Defendants' active concealment and non-disclosure of incriminating documentary proof in order to obtain damaging—yet misinformed—admissions, including declarations and releases, from class members; and

(ii)  The coercive nature of defendants' position as employers of many putative class members that—as they admit below—will be used to leverage against putative class members on the pretext of their alleged non-compliance with a non-existent policy purportedly requiring employees to complain about wage theft and other compensation violations to management (the very individuals committing the violations).

To ensure that defendants cannot use against putative class members any alleged violations of this alleged wage-complaint policy as a pretext to mislead or coerce individual putative class members into giving inaccurate or uninformed statements (or declarations) regarding violations and damages—

compounded by concealing from each member what defendants' own *relevant* records show as to the falsification of such member's clock-in/clock-out times and off-the-clock work—defendants should be required to disclose to each individual putative class member all relevant falsified entries and proof of off-the-clock work prior to soliciting any information from such individual.

Requiring defendants to provide their own documentation to each putative class member showing the *actual* facts will ensure—as LR 23.1.C(1) requires—"a complete and balanced presentation of the relevant facts."

### *DEFENDANTS' VERSION*:

Plaintiffs make numerous representations about Defendants' allegedly improper intent and proposed conversations with unrepresentative and putative class members. Indeed, Plaintiffs purport to know what Defendants would communicate with putative class members about, but they do not. Their representations amount only to speculation. For the reasons discussed more fully below, Defendants intend to comply with their ethical obligations in communicating with represented and unrepresented putative class members. Furthermore, there is no record of abuse here that would justify, *see infra* pp. 24-26, imposing restrictions on Defendants' right to communicate with putative class members and thus their right to defend

- 4 -

themselves in this action. In sum, Plaintiffs' proposed restrictions are unwarranted and legally unfounded. Finally, Defendants do not oppose the Court's holding a telephone hearing, but do not believe that such a hearing is necessary here.

2. **Nature of Dispute Involving Fed. R. Civ. P. 23:**

***PLAINTIFFS' VERSION:***

A.      The plaintiffs seek Rule 23(b)(3) certification for their Georgia RICO claims of a class defined as all of defendants' mortgage processors, mortgage underwriters, and mortgage closers who have worked at the defendants' Georgia mortgage operations centers.  Plaintiffs allege that defendants have engaged in a racketeering scheme of theft of their labor, services, and wages for the past five years based on defendants' falsification of the class members' clock-in/clock-out times and their off-the-clock work. [Doc. 41: TAC ¶¶ 134-184, 195-269.]

Georgia law requires that all employer-corporations—***independent*** of their FLSA's overtime obligations—must pay their employees for all hours worked at their basic wage rate:

> "Every . . . corporation . . . employing skilled or unskilled wageworkers . . . shall make wage and salary payments to such employees or to their authorized representatives . . . on such dates during the month . . . such that the month will be divided into at least two equal periods.  Such payments . . . shall in every case correspond to the *full net amount of*

*wages or earnings due the employees* for the period for which the payment is made.

OCGA § 34-7-2 (emphasis added).  Georgia law makes the theft of an employee's wages or services a felony.  <u>See</u> OCGA §§ 16-8-2, 16-8-4.  Under the Georgia RICO Act, each act of felony theft constitutes a predicate racketeering act sufficient to form a pattern of racketeering activity.  <u>See</u> OCGA §§ 16-14-3(8), 16-14-3(9)(A)(ix).

To prove defendants' class-wide theft of wages and services, plaintiffs will rely on ***defendants' own records***.  Defendants' own records document, among others, (i) when defendants falsified the putative class members' clock-in/clock-out times, (ii) when the putative class members were working off-the-clock, and (iii) how the total amount of wages and services defendants stole from each class member.

**B.**   Also, the plaintiffs seek conditional FLSA collective-action certification of the same class described in § 1.A, treated as two sub-classes for FLSA purposes, and a third sub-class covering all of the defendants' mortgage operations centers in the United States.  Plaintiffs' FLSA claims allege that the defendants have engaged in illegal overtime practices by (i) improperly calculating the class members' regular rate of pay used to compute their overtime compensation, (ii) not paying for off-the-clock

overtime hours, and (iii) falsifying the employees' time to avoid paying for all overtime hours worked.  [Doc. 41: TAC ¶¶ 10-133, ¶¶ 185-194.]

### ***DEFENDANTS' VERSION*:**

The named Plaintiffs are former employees of Regions Bank.  They allege that their employer failed to pay them all overtime they were allegedly owed pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §201 *et seq.* (the "FLSA"), because they worked "off the clock" under individualized circumstances and that their production bonus payments were excluded from the calculation of the regular rate of pay used to compute their overtime compensation.  Plaintiffs purport to bring their FLSA claims on behalf of themselves and all those similarly situated as a collective action pursuant to 29 U.S.C. § 216(b).

Using the same factual allegations underlying their FLSA claims, Plaintiffs purport to bring a Local Rule 23.1 class action claim pursuant to the Georgia Racketeer Influenced and Corrupt Organizations Act, OCGA § 16-4-1, *et seq.* ("Georgia RICO") for certain fellow employees in Gainesville, Georgia.

**3.  Type of Order Limiting Communications And Content of Order:**

The parties disagree that an order limiting communications between the defendants and the putative class members is appropriate.

## **\*\*  *PLAINTIFF'S PROPOSAL*  \*\***

### *1.  Governing Legal Principles*

#### *1.A.  The First Amendment Protects Only a Party's Right to Disseminate Accurate Information About a Lawsuit, Not to Gather Information About the Lawsuit*

The purpose of imposing limited restrictions on any First Amendment-protected communications by counsel or parties with putative class members is to ensure "a complete and balanced ***presentation*** of the relevant facts." LR 23.1.C(1) (emphasis added).  The key to LR 23.1.C—just as with a court's authority to restrict communications—is the word "presentation."

The reason LR 23.1.C uses the word "presentation" is elementary.  The First Amendment only protects a party's ***right to disseminate*** its views on the lawsuit to putative class members—nothing more.  Bernard v. Gulf Oil Co., 619 F.2d 459, 474 n. 28 (5th Cir. Cir. 1980) (en banc) ("We are dealing here ***not*** with the right . . . to gather information but with the right of individuals to ***disseminate*** it") (emphasis added),[2] aff'd on other grounds, 452 U.S. 89 (1981).

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Moreover, because a party's ***presentation*** to putative class members may be misleading or coercive, a Court not only can require full and fair disclosure but bar any presentation altogether.  Abdallah v. Coca-Cola Co., 186 F.R.D. 672, 678 (N.D. Ga. 1999) (Story, J.).  A total ban may be appropriate when the Rule 23 defendant is also the employer of the putative class members because:

> "[u]nsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal.  The damages from misstatements could well be irreparable."

Id. (quoting Kleiner v. First Nat'l Bank of Atlanta, 751 F.2d 1193, 1203 (11th Cir. 1985)).

At a minimum then, Abdallah teaches that LR 23.1.C(1)'s injunction for "a complete and balanced presentation of the relevant facts" is at its zenith when—as here—the Rule 23 defendant employs most of the putative class. Id.  This Court may thus impose restrictions on a defendant-employer's presentation to its employees to prevent any effort—intentional or not—that may mislead or coerce "on the basis of a one-sided presentation of the facts, without opportunity for rebuttal."  Id. (quotation omitted).  The purpose of such restrictions is to protect the employees from the irreparable harm inherent in one-sided misstatements and thereby ensure their exercise of informed consent.  Id.

### 1.B.  LR 23.1(C)(1) Requires that All Communications to Putative Class Members be "Complete and Balanced" and Factual

LR 23.1(C)(1) requires presentations to putative class members be not just complete and balanced but based on "relevant **facts**."  (Emphasis added.) In other words, defendants cannot omit or conceal relevant "facts" when communicating with the class members when such concealment or non-disclosure would create a false or misleading impression.

Defendants contend (below) that they are free to talk to all putative class members about whether, as employees, they violated some so-called "policy" that defendants claim required the employees to complain about any wage and overtime violations.  Using this so-called policy as a hammer, defendants want to ask putative class members whether they were victims of any wage theft or overtime violations.  But defendants want the class members to believe that if no such violations were ever reported (to the very managers committing the crimes), the putative class members will be (i) admitting a policy violation if they claim damages now, (ii) look like liars if they claim damages now.

What defendants want is for putative class members to forego claiming any injury or harm out of fear of being fired for violating some phantom Regions policy and getting a bad job reference (if still employed).  Defendants also want them to fear the accusation that any claim of damages now means

they are lying because they never complained—and worse, connecting the dots, scared about a perjury accusation if they participate in this case and seek damages.

What defendants want is to use the coercive force of their so-called policy—and the threat of termination for violating it, where applicable—to obtain damaging admissions and declarations from as many putative class members as possible.  The problem for defendants, however, is multi-fold.

Defendants' bi-weekly pay-period summaries for the class period show each employee's hours worked, earnings, overtime paid, and non-discretionary bonus payments for each period and for the entire year to that point.  These summaries—particularly for the final paycheck of the year—irrefutably prove that defendants repeatedly violated the FLSA by not adjusting the employee's regular rate of pay for purposes of calculating their overtime compensation.

But employees are hardly likely to know the FLSA regulations that *required* defendants to include the non-discretionary bonus payments in the overtime calculation.  See 29 C.F.R. §§ 779.208, 779.209.  Likewise, putative class members whom defendants confront with their so-called wage-complaint policy will likely not know that the Eleventh Circuit just held that equitable defenses—such as *in pari delicto* and unclean hands—will not bar

overtime claims.  Bailey v. TitleMax of Georgia, Inc., --- F.3d ---, No. 14-11747, 2015 WL 178346 (11th Cir. Jan. 15, 2015).

So defendants, using this so-called wage-complaint policy as a sword, can secure damaging—but wholly misinformed—admissions and declarations from putative class members.  Admissions that defendants' own records will very likely contradict.

LR 23.1(C)(1) requires defendants to make "complete and balanced presentations of the relevant *facts*."  (Emphasis supplied.)  The key word here is "facts."  And facts are not just affirmative statements, but also inferences wrongly drawn because the speaker concealed other material facts that would have led to a different, more accurate conclusion.  See United States v. Naranjo, 634 F.3d 1198, 1207 (11th Cir. 2011) ("A scheme to defraud requires proof of a material misrepresentation, or the omission or concealment of a material fact calculated to deceive another out of money or property.").

### 1.C.  Parties Do Not Have a First Amendment Right to Ask Questions of Putative Class Members

The Supreme Court has repeatedly held that the First Amendment does *not* guarantee anyone the right to gain information or solicit evidence from private individuals.  "The right to speak . . . does not carry with it the

unrestrained right to gather information." Zemel v. Rusk, 381 U.S. 1, 17

(1965).  In Houchins v. KQED, Inc., 438 U.S. 1 (1978), the Court ruled:

> There is . . . **no basis** for the claim that the First Amendment compels others—**private persons** or governments—to supply information.

Id. at 11 (emphasis added); see id. ("There is no discernible basis for a

constitutional duty to disclose, or for standards governing disclosure of or

access to information.").

At most, "[t]he First Amendment protects the right to gather

information about what **public officials** do on **public property**, and

specifically, a right to record matters of public interest." Smith v. City of

Cumming, 212 F.3d 1332, 1333 (11th Cir. 2000) (emphasis added).  But the

First Amendment does **not** grant anyone the right to obtain information from

**private** individuals, including employees or co-workers, for purposes of

defending a private lawsuit or soliciting information related to the lawsuit on

the pretext of correcting the very same problem.  Linkmeyer v. M.S.D.

Lawrence Township School Corp., No. 1:13-CV-1144, 2013 WL 6804750, *3-*6

(S.D. Ind. Dec. 20, 2013); see Houchins, 438 U.S. at 11.

In Linkmeyer, the plaintiff's complaint alleged a First Amendment-

retaliation claim because the defendant demoted him for trying to obtain

information from subordinates to support a defamation action.  2013 WL

6804750, at *1-*3.  The district court dismissed for failure to state a claim

because the plaintiff alleged no facts that showed his efforts were intended to draw attention to a matter of public concern.  Id. at *6.

> Linkmeyer observed that
>
> the First Amendment offers ***no protection*** to speech the sole purpose of which is to bolster the [party]'s position in ***a private personnel dispute***—even if the speech relates in some manner to a matter of general societal interest."

Id.  Just because a lawsuit may involve "an issue the public generally finds interesting" does not mean the lawsuit is a "matter of public concern" for First Amendment purposes.  Id. at *3 (citation omitted).

To receive First Amendment protection then, a party must demonstrate some intent to draw attention to a public issue.  Id. at *6.  By merely showing that a party "sought only to gather the information he needed" for a private lawsuit will not suffice.  Id.

> This is the epitome of ***posturing in a private personnel dispute***, and the First Amendment ***does not protect*** such efforts."

Id. (emphasis added).

In a Rule 23 case, therefore, a defendant has no First Amendment right to interview or interrogate employees to gather information to defend a private employment dispute.  Id.  Nor does the First Amendment protect an employer's attempt to investigate an internal company problem at the heart of the pending Rule 23 lawsuit.  Id.

Similarly, in <u>Mevorah v. Wells Fargo Home Mortgage, Inc.</u>, No. 05–1175, 2005 WL 4813532 (N.D. Cal. Nov. 17, 2005), the court held that in a Rule 23 case, the First Amendment protects a defendant-employer's right to make a *presentation* to its employee-class members.  But as to prohibiting the defendant-employer's from questioning its employee-class members to obtain declarations and admissions in defense of the case, <u>Mevorah</u> clearly suggests the First Amendment provides no protection at all:

> It is questionable whether the soliciting and preparation of declarations is within the ambit of constitutionally protected speech, ***since this goes beyond*** the dissemination of information or mere communication.

<u>Id.</u> at *5 n. 3 (emphasis added).

No interrogation could be more fraught with coercive overtones than a Rule 23 defendant-employer using its leverage against the employee-class members.  Employers, and their lawyers, easily can pressure employees by questioning them in order to obtain information (whether true or not) that could undermine the employees' claims, or the lawsuit itself, and ultimately exclude them from reaping the benefits of a Rule 23 class or a collective action.  <u>See</u> <u>Abdallah</u>, 186 F.R.D. at 678 (Story, J.); <u>accord</u> <u>Kleiner</u>, 751 F.2d at 1202 (in an ongoing business relationship, such as employer-employee, any communications are more likely to be coercive).

A defendant-employer uses its inherent power over its employee-class members to try to secure admissions, declarations, settlements, and

releases—not caring if they are factually accurate or legally well-grounded. The defendant-employer obtains these advantages by using "[u]nsupervised" and "unilateral" interrogations and interviews in which employees are overtly or subtly pressured to abandon their rights—knowing that employees will feel a strong obligation to please the employer.  Id.; Mevorah, 2005 WL 4813532, at *4 ("it is still reasonable to assume that an employee would feel a strong obligation to cooperate with his or her employer in defending against a lawsuit.").

Thus, in the pre-certification context, a blanket bar on an employer's interrogation or interview of employee-class members makes perfect sense.  It protects the employees from making inaccurate admissions or compromising their legal rights.  Abdallah, 186 F.R.D. at 678 (Story, J.); accord Kleiner, 751 F.2d at 1202.  And because questioning employees raises no First Amendment concerns, a court has the unfettered authority to impose an absolute ban on such interviews or interrogations—no matter what excuse the employer offers—to protect the putative class from the employer's use of inherently coercive tactics.  Id.

In sum, a blanket restriction on questioning employees on matters related to a pending Rule 23 lawsuit raises **no** questions of reasonableness because **no** First Amendment rights are involved.  See Foto USA, Inc. v. Bd. of Regents of Univ. Sys. of Florida, 141 F.3d 1032, 1035 n. 4 (11th Cir. 1998)

("We do not consider the reasonableness of any restrictions because we hold that no First Amendment right is implicated in this case.").  A court may therefore impose a blanket ban on ***questioning*** without making the kinds of factual findings typically needed to restrict a party's ***dissemination*** of its own views about a lawsuit.  See <u>Bernard</u>, 619 F.2d at 476; <u>id.</u> at 474 n. 28; <u>see also</u> <u>Abdallah</u>, 186 F.R.D. at 678 (Story, J.) (prohibiting the defendant-employer from having any contact with its employee-putative class members about the pending lawsuit).[3]

## 2.  <u>*Restrictions on the Defendants*</u>

### 2.A.  <u>*No Contact with Plaintiffs or Opt-ins Relating to This Action*</u>

The name plaintiffs and one opt-in are former employees of defendants. Two opt-in plaintiffs, however, are still currently employed by defendants. All three name plaintiffs have executed written agreements with plaintiffs' counsel to serve as their attorneys in this action.  All three opt-in plaintiffs have, in addition to designating plaintiffs' counsel as their attorneys here via

---

[3] The point is that *neither* the First Amendment *nor* LR 23.1(C)(1)—which talks only of "presentations"—guarantees a defendant-employer the right to *question* employees to gather information relating to a class action.  Such questioning is subject to court-ordered regulation focused on full and complete disclosure.

LR 23.1(C)(1) makes that clear:  "In class actions . . . , there is an inherent risk that a class member's decision [not to participate] may, *in the absence of court regulation of communications regarding that class action*, not be based on a complete and balanced presentation of the relevant facts."

their opt-in consents, also executed written retainer agreements.  See Doc. 8

¶ 5; Doc. 12-1 at 1; Doc. 12-2 at 1.

   Plaintiffs' counsel have informed the defendants that they are

prohibited from communicating with plaintiffs about this action, including

the underlying allegations and defendants' alleged conduct, outside of the

discovery process and without counsel present.  On the other hand, routine

unrelated business communications with opt-in plaintiffs who remain

employed by defendants are permitted.

   The Georgia Rules of Professional Responsibility, applicable here

pursuant to LR 83.1.C, state in relevant part:

### RULE 4.2 – COMMUNICATION WITH PERSON REPRESENTED BY COUNSEL

   a. A lawyer who is representing a client in a matter shall not
   communicate about the subject of the representation with a person
   the lawyer knows to be represented by another lawyer in the matter,
   unless the lawyer has the consent of the other lawyer or is
   authorized to do so by law or court order.

Ga. R. Prof. R. 4.2.

   Equally important is Rule 3.4 of the Georgia Rules of Professional

Responsibility, which prohibits end-runs around the other rules:

   A lawyer shall not . . . use methods of obtaining evidence that violate
   the legal rights of the opposing party or counsel[.]

Ga. R. Prof. R. 3.4(g)

Together, Rules 3.4 and 4.2 make clear that defendants and defense counsel are prohibited from communicating with plaintiffs about any topics, past or present, that relate to this action—except through the discovery process or with plaintiff counsel's consent.  Defendants' employees thus cannot act as stalking horses for defense counsel on the pretext of doing an exceedingly belated internal investigation into plaintiffs' allegations.  See Ga. R. Prof. R. 3.4(g) ("A lawyer shall not . . . use methods of obtaining evidence that violate the legal rights of the opposing party or counsel[.]").

Nor does the First Amendment trump the prohibitions set forth in Ga. R. Prof. R. 4.2 and 3.4.  The Eleventh Circuit is clear on this point.  See Kleiner v. First Nat'l Bank of Atlanta, 751 F.2d 1193, 1206-07 & n. 28 (11th Cir. 1985) (barring all communications relating to the class-action lawsuit, except for routine business matters).

Therefore, plaintiffs request the following restriction be imposed on defense counsel and both defendants—including all employees and agents:

> There shall be no communications with any name plaintiff or with any current or future opt-in plaintiffs outside the formal discovery process or without the consent of the name plaintiffs' counsel of record, except—as to any currently employed present or future opt-in plaintiff—for routine business matters unrelated to this action.[4]

---

[4] Any attempt by defendants or their lawyers to communicate with plaintiffs or the opt-ins will be considered a willful breach of LR 83.1.C and Rules 4.2 and 3.4.  Plaintiffs will seek immediate relief from this Court and with the State Bar of Georgia—including in the event defendants try to retaliate in any way against any opt-in or putative class member.

**2.B.**  **_Disclosures For Presentations to Putative Class Members_**

In accordance with LR 23.1.C(1)'s injunction that class members receive "a complete and balanced presentation of the relevant **_facts_**," plaintiffs request entry of an order imposing the following restrictions on the defendants and their lawyers:

(1)     With respect to any presentation of information, including any views or opinions, to any "putative class members" by the defendants—whether acting through senior management, in-house counsel, managers, supervisors, other employees, any outside counsel, or any other agent of any kind—that relates to the allegations and claims in this action, whether for the purpose of gathering information in a one-on-one or group basis to defend this action or to address any employee complaints regarding past, current or future compensation practices, such communication shall commence with the following statements:

(a)   The person(s) present on the defendants' behalf is a defendant employee or agent acting at the direction of defendants' management or is a lawyer acting for the benefit of the defendants, or both if applicable;

(b)   The person(s) present on the defendants' behalf is there to address a lawsuit filed against the defendants, as well as employee complaints, involving allegations that the

defendants failed to pay employees all the wages and

overtime they had earned and were entitled to receive;

(c)     The lawsuit is a class-action—which means the individual

may receive money as a result of the lawsuit;

(d)     The allegations of wrongdoing (accurately stated),

accompanied by a copy of the Third Amended Complaint;

(e)     The "putative class member" is under no obligation to stay,

or listen, or speak, or respond;

(f)     No record of anyone who does not stay, speak, or respond is

being made and no record of who does not stay, speak, or

respond will be made at any future time;

(g)     No adverse action will be taken if the "putative class

member" chooses not stay, speak, or respond;

(h)     No adverse action will be taken if the "putative class

member" says, in substance, they believe they did not were

not properly compensated or did not receive all compensation

owed to them, whether or not they complained to anyone

about any compensation issues;

(i)     The names, phone numbers, emails, fax numbers, and

addresses of plaintiffs' counsel; and

(j)     The "putative class member" is free to leave at any time, including at this point.

(2)     For purposes of an order imposing plaintiffs' proposed restrictions, the term "putative class members" should include all individuals who have performed for the defendants anywhere in the United States the primary job duties of (a) mortgage processor, (b) a mortgage underwriter, and (c) a mortgage closer from at least as early as May 20, 2009, through the date of the Court's order ruling on certification.

**\*\* _Proposed No. 3 - If the Court Allows Questioning_ \*\***
**(<u>See</u> Point 2.C, below)**

(3)     Defendants cannot seek statements or admissions regarding a putative class member's complaints (or absence of complaints) about past or current wage or compensation problems without:

(a)     Providing a copy of all changes to time records of the "putative class member," along with all records showing that the "putative class member" employee was performing work either **_before_** or **_after_** the altered clock-in and clock-out times—along with an explanation as to what the documents show;

(b)     Providing a copy of the time records of the "putative class member," along with all records showing that the "putative

- 22 -

class member" was performing work either **_before_** or **_after_**

their clock-in and clock-out times—along with an

explanation as to what the documents show;

(c) Providing a copy of last yearly pay-check summaries for the

"putative class member" since at least 2011, reflecting all

regular earnings, all overtime paid, and all non-discretionary

bonus payments—along with an accurate calculation of the

hourly rate defendants used for the regular earnings, the

rate used for overtime compensation, and an explanation

that if the hourly rates are the same and bonus payments

were made, then the "putative class member" is entitled to

recover damages from defendants in this action.

### 2.C.  <u>No Questioning of Putative Class Members</u>

Plaintiffs contend that unilateral, unsupervised interviews or

interrogations by a defendant-employer of its employees who are also

putative Rule 23 class members—as well as potential FLSA opt-in

plaintiffs—presents the inherent threat of coercing the employees to make

admissions (which may or may not be accurate), sign declarations (which may

or may not be accurate), sign unjust releases or agree to unjust settlements,

or induce the non-participation in this action.

This threat of a coercive and intimidating situation is magnified by defendants demand that they question all putative class members about whether they ever formally complained about not receiving proper compensation—which clearly puts each current employee between the proverbial rock and hard-place.  Either they claim damages to which defendants say, "you violated our policy and will suffer [fill in the blank]."  Or defendants say, "you are lying because you never complained before."

The point for defendants is to coerce putative class members into denying any injury—even though defendants' own records prove otherwise.  Because defendants' questioning is not designed to elicit truthful answers, they should be barred from questioning the putative class members.

*No* First Amendment rights are implicated by a defendant-employer's interviews, interrogations, or questioning of its own employees. Plaintiffs thus ask that the Court impose the following restrictions on all contacts and communications with putative class members by defendants and their lawyers:

(1)    The defendants—whether acting through senior management, in-house counsel, managers, supervisors, other employees, any outside counsel, or any other agent of any kind—are *prohibited* from asking any questions of or attempting by any other method to elicit information from any unrepresented putative class member that relate to the allegations

and claims in this action, whether for the purpose of obtaining information to defend this action, or to address employee complaints about past, current or future compensation practices, or for any other reasons.  See Abdallah, 186 F.R.D. at 678 (Story, J.) (prohibiting the defendant-employer from having any contact with its employee-putative class members about the lawsuit).

(2)    For purposes of an order imposing plaintiffs' proposed restrictions, the term "putative class members" should include all individuals, including all opt-in plaintiffs, who have performed the primary job duties of (a) mortgage processor, (b) a mortgage underwriter, and (c) a mortgage closer from at least as early as May 20, 2009, through the date of the Court's order ruling on certification.

## ** *DEFENDANTS' PROPOSAL*  **

On August 14, 2014, counsel for the parties conferred, in accordance with Local Rule 23.1, on the issue of whether the Court should impose restrictions on counsel communications with putative class members.  The Defendants believe that, consistent with the Supreme Court's opinion in *Gulf Oil Co. v. Bernard*, 452 U.S. 80 (1981), the Court need not impose any restrictions on the parties' counsels' communications other than those

already imposed by the lawyers' ethical obligations, to which they intend to hold themselves scrupulously.[5]

Defendants' counsel need to be able to communicate with putative class members about matters relating to pay primarily for two reasons.  First, in order to defend the Motion for Conditional Certification of a collective action under the FLSA, Defendants' counsel must gather evidence regarding the issue of whether the putative opt-in plaintiffs are similarly-situated to the named Plaintiffs and each other.  This is done, of course, by interviewing willing unrepresented current and former employees, to whom counsel explain the *Johnnie's Poultry* safeguards, the pillars of which include: (1) communicating the purpose of the questioning to the employee prior to the interview; (2) assuring the employee that no reprisals will take place based upon the substance of any answer or refusal to answer any question; and (3) obtaining the employee's permission to conduct the interview on a voluntary basis.  Counsel will additionally explain: the existence of the lawsuit ("a lawsuit about whether certain mortgage employees were paid overtime properly"); their right not to be interviewed; that counsel represent the Defendants; and that participating in the interview does not affect the

---

[5] Since *Gulf Oil*, the Manual of Complex Litigation has changed.  It now counsels that judicial intervention into pre-certification contacts is justified only with a clear record of abuse and then with a carefully drawn order.  Manual of Complex Litigation (4th) section 21.12 (2004).

employees' rights to participate in the action, if permitted by the Court. Counsel will not, of course, make any comments "in a way which tends to misrepresent the status, purpose, and effects of the action or any actual or potential court orders therein, which may create impressions tending without cause to reflect adversely on any party...." L.R. 23.1(C)(3)(b). Second, if current Regions Bank Gainesville mortgage employees raise concerns about allegedly incorrect pay, as they are required to do under Regions Bank policy, Regions Bank investigates and takes any necessary appropriate action as a matter of course.

A blanket prohibition on communications with putative class members and FLSA opt-ins prior to any showing of misconduct or coercion by Defendants is both premature and legally unfounded. Indeed, the majority of federal courts hold that a "'defendant in a § 216(b) action is not categorically forbidden from communicating with prospective opt-in plaintiffs.'" *Bobryk v. Durand Glass Mfg. Co., Inc.*, 2013 WL 5574504, *3 (D.NJ Oct. 9, 2013) (quoting *Longcrier v. HL-A Co.*, Inc., 595 F.Supp.2d 1218, 1225 (S.D. Ala. 2008) ("As a general matter, employers are free to communicate with unrepresented prospective class members about the lawsuit and even to solicit affidavits from them concerning the subject matter of the suit"); *see also Parks v. Eastwood Ins. Servs., Inc.*, 235 F.Supp.2d 1082, 1084 (C.D. Cal.2002) ("[t]he law is not settled on this issue, but the majority view seems

to be against a ban on pre-certification communication between Defendant and potential class members.").

In *Gulf Oil*, *supra*, the Supreme Court held that "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." 452 U.S. at 100.  The Court further explained that "such a weighing – identifying the potential abuses being addressed – should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." *Id*. at 102.  Accordingly, to justify a limitation on communications, a plaintiff must show: "1) that a particular form of communication has occurred or is threatened to occur and 2) that the particular form of communication at issue is abusive in that it threatens the proper functioning of the litigation."  *Longcrier*, 595 F.Supp.2d at 1226-27). Several courts within the Eleventh Circuit have limited communication only <u>after</u> a showing of improper or coercive behavior by a defendant. *Kleiner v. First Nat'l Bank*, 751 F.2d 1193, 1202 (11th Cir. 1985) (restrictions proper where bank undertook an abusive communications campaign to putative class of borrowers."); *Billingsley v. Citi Trends, Inc.*, 560 Fed.Appx. 914, 922 (11th Cir. 2014) (upholding district court decision refusing to enforce arbitration agreements noting, "[t]he district court simply

did what other district courts routinely do: exercise discretion to correct the effects of pre-certification communications with potential FLSA collective action members after misleading, coercive, or improper communications are made.); *See Kerce v. West Telemarketing Corp.*, 575 F.Supp.2d 1354, 1367 (S.D.Ga. 2008) (refusing to strike affidavits because no record of abusive communications to potential class members or evidence that service misrepresented facts about lawsuit or discouraged participation).

Finally, contrary to Plaintiffs' assertions, the nature of the employer-employee relationship is not so inherently coercive that a blanket communication ban is warranted.  As the Longcrier Court noted, "[i]in tracing out the fault line between conduct which warrants restrictions and conduct which does not, it bears emphasis that mere inherent coerciveness in the employment relationship, is insufficient, in and of itself to warrant imposition of limitations on employers' ability to speak with potential class members prior to certification." *Longcrier*, 595 F.Supp.2d at 1227.

Respectfully submitted,

**s/ *Marc N. Garber***
MARC N. GARBER
Georgia Bar No. 283847
ALAN H. GARBER
Georgia Bar No. 283840
THE GARBER LAW FIRM, PC
4994 Lower Roswell Rd Ste 14
Marietta, GA 30068-5648
Tel:  (678) 560-6685

Fax: (678) 560-5067
ahgarber@garberlaw.net
mngarber@garberlaw.net

Jack Rosenberg
Georgia Bar No. 614475
5424 Glenridge Dr. Ste 53
Atlanta, GA 30342
Tel:  (404) 343-1091
Fax: (404) 343-1497
jackrosenberg2@gmail.com

***Counsel for the Plaintiffs and the
Putative Class***

***AGREED AS TO FORM:***

***s/ Kristy Offitt***
Margaret H. Campbell
Ga. Bar No. 105978
margaret.campbell@ogletreedeakins.com
A. Craig Cleland
Ga. Bar No. 129825
craig.cleland@ogletreedeakins.com
Kristy G. Offitt
Georgia Bar No. 707231
kristy.offitt@ogletreedeakins.com

OGLETREE, DEAKINS, NASH,
    SMOAK & STEWART, P.C.
One Ninety One Peachtree Tower
191 Peachtree Street, N.E., Suite 4800
Atlanta, Georgia  30303
Telephone: (404) 881.1300
Fax: (404) 870.1732

***Counsel for Defendants Regions
Financial Corporation and
Regions Bank***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on January 20, 2015, the foregoing submission was filed with the Clerk using the Court's CM/ECF filing system, which will serve a copy on all counsel of record.

<u>s/ *Marc N. Garber*</u>
MARC N. GARBER