**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

| | | |
|---|---|---|
| BETTY WILSON, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 2:14-CV-00105-RWS |
| REGIONS FINANCIAL | : | |
| CORPORATION and REGIONS | : | |
| BANK, | : | |
| | : | |
| Defendants. | : | |

## <u>ORDER</u>

This case comes before the Court on Plaintiffs' Motion for Conditional

Certification [45], Defendants' Motion for Judgment on the Pleadings [63],

Plaintiffs' Motion for Leave to File a Five-Page Sur-Reply in Opposition to

Defendants' Rule 12(c) Motion [100], and Plaintiffs' Amended Motion for

Leave to File a Sur-Reply [102].  After reviewing the record, the Court enters

the following Order.

## Background

Plaintiffs bring this putative class action under the Fair Labor Standards

Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, to recover unpaid overtime

compensation.  Plaintiffs also assert claims under the Georgia Racketeer

Influenced and Corrupt Organizations Act ("Georgia RICO"), O.C.G.A. § 16-14-1 *et seq.*, in which they allege Defendants converted their labor and services through a scheme of theft and extortion.  Plaintiffs were employees of Defendants Regions Financial Corporation and Regions Bank.

Defendants provide mortgage-loan services throughout the United States, including at a mortgage-operations center in Gainesville, Georgia, with a satellite location in Cumming, Georgia (collectively, "Gainesville MOC"). (Third Am. Compl., Dkt. [41] ¶¶ 44-47.)  Defendants also operate mortgage-operations centers in Alabama, Indiana, Tennessee, Florida, and Mississippi. (Id. ¶¶ 48-51.)  Defendants employ individuals to work in three mortgage-related positions at all MOCs: (1) mortgage processor; (2) mortgage underwriter, and (3) mortgage closer.  (Id. ¶¶ 52-57.)

The three named Plaintiffs in this action, Betty Wilson, Linda Wick, and Susan Colbert, worked at the Gainesville MOC.  (Id. ¶ 60.)  At various times from August 2000 until about April 2014, Wilson was employed as either a mortgage processor or mortgage underwriter.  (Id. ¶ 62.)  From September 2008 until sometime in 2013, Wick worked as a mortgage closer.  (Id. ¶ 63.) Colbert was employed as a mortgage underwriter from June 2009 until around

2

March 2014.  (<u>Id.</u> ¶ 64.)

Plaintiffs contend that Defendants are employers under the FLSA, Plaintiffs were not exempt employees under the statute, and they were due overtime compensation for hours worked in excess of 40 hours per week.  (<u>See id.</u> ¶¶ 68-83.)  Moreover, all mortgage processors, mortgage underwriters, and mortgage closers employed at all MOCs in nonsupervisory positions were classified as non-exempt employees under the FLSA.  (<u>Id.</u> ¶ 100.)

All employees in these three positions, including Plaintiffs, were eligible for and often paid nondiscretionary production bonuses for meeting production goals.  (<u>Id.</u> ¶¶ 102-03.)  All employees used an electronic timekeeping system to clock in and clock out each day, including for lunch breaks, at the Gainesville MOC.  (<u>Id.</u> ¶¶ 111-13.)  At various times since May 20, 2009, Plaintiffs worked in excess of 40 hours in a workweek.  (<u>Id.</u> ¶ 115.)

Plaintiffs accuse Defendants of cheating them and other employees at both the Gainesville MOC and other MOCs out of their proper overtime pay in three ways:

> (1) Defendants excluded *all MOC* employees' nondiscretionary bonus payments from the calculation of their regular rate of pay used to compute overtime compensation;

>      (2) Defendants required *Gainesville MOC* employees to work off
>      the clock to complete their assigned tasks and refused to pay all
>      overtime hours actually worked; and
>
>      (3) Defendants falsified *Gainesville MOC* employees' actual
>      clock-in and clock-out times to decrease their compensable
>      overtime hours.

(See id. ¶ 65.)  Plaintiffs state that Defendants' conduct amounted to a common

policy, practice, plan, or scheme.  (Id. ¶¶ 131-33.)  In view of these allegations,

Plaintiffs seek conditional certification of a collective action consisting of three

subclasses to recover unpaid overtime.

In addition to seeking recovery under the FLSA, Plaintiffs bring class

action claims on behalf of Gainesville MOC employees for violations of

Georgia RICO.  Plaintiffs allege that Georgia law requires every corporation to

pay its employees "the full net amount of wages or earnings due the employees

for the period for which the payment is made."  O.C.G.A. § 34-7-2(b).  But

since at least May 20, 2009, Defendants

>      have systematically taken and converted without justification for
>      their own benefit, and continue to do so, the off-the-clock labor
>      and services of mortgage processors, mortgage underwriters, and
>      mortgage closers at the Gainesville MOC, including [Plaintiffs], in
>      order to decrease compensable hours in excess of 40 in a
>      workweek per employee while still obtaining essentially the same
>      level of employee production.

4

(Third Am. Compl., Dkt. [41] ¶ 141.)

Plaintiffs maintain that Defendants used economic fear to obtain their labor and services.  (Id. ¶ 143.)  And by decreasing labor costs, Defendants increased their cash flow to pay dividends to stockholders and to pay principal and interest on outstanding debt.  (Id. ¶ 145.)  Plaintiffs thus allege that Defendants have engaged in a pattern of racketeering activity by committing criminal acts against its mortgage processors, mortgage underwriters, and mortgage closers at the Gainesville MOC.  (Id. ¶¶ 146, 166-74.)  These acts include theft of Plaintiffs' services, theft of Plaintiffs' contractually earned straight-time hourly rates, and extortion.  (Id.)

Plaintiffs move for conditional certification of the three subclasses described above, while Defendants move for judgment on the pleadings of the Georgia RICO claims contained in Plaintiffs' Third Amended Complaint.

## Discussion

## I.   Motion for Conditional Certification

### A.   Legal Standard

The FLSA authorizes collective actions, providing, in pertinent part:

> An action . . . may be maintained against any employer . . . by any
> one or more employees for and in behalf of himself or themselves
> and other employees similarly situated.  No employee shall be a
> party plaintiff to any such action unless he gives his consent in
> writing to become such a party and such consent is filed with the
> court in which such action is brought.

29 U.S.C. § 216(b).  Under this provision, "a putative plaintiff must

affirmatively opt into a § 216(b) action by filing his written consent with the

court in order to be considered a class member and be bound by the outcome of

the action." Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1216 (11th Cir.

2001).  The Court, in its discretion, may authorize the sending of notice to

potential class members of their right to opt in. Dybach v. State of Fla. Dep't

of Corrections, 942 F.2d 1562, 1567 (11th Cir. 1991).

As is clear from the plain language of § 216(b), an opt-in class may be

certified only where the named plaintiff sues on behalf of himself and other

"similarly situated" employees. Id. at 1217 (citing 29 U.S.C. § 216(b)); Kreher

v. City of Atlanta, No. 1:04-CV-2651, 2006 WL 739572, at *2 (N.D. Ga. Mar.

20, 2006).  The Eleventh Circuit has approved a two-tiered approach to making

class certification decisions under this provision:

> The first determination is made at the so-called 'notice
> stage.'  At the notice stage, the district court makes a

6

decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members.  Because the Court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class.  If the district court 'conditionally certifies' the class, putative class members are given notice and an opportunity to 'opt-in.'  The action proceeds as a representative action throughout discovery.

The second determination is typically precipitated by a motion for 'decertification' by the defendant usually filed after discovery is largely complete and the matter is ready for trial.  At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question.  If the claimants are similarly situated, the district court allows the representative action to proceed to trial.  If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice.  The class representatives—i.e. the original plaintiffs—proceed to trial on their individual claims.

Hipp, 252 F.3d at 1218 (citing Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995)).

This case is before the Court for the "first determination" of class certification.  In deciding whether to conditionally certify the proposed class, the Court must determine (1) whether the employees sought to be included in the putative class are "similarly situated" with respect to their job requirements and pay provisions, and (2) whether there are other employees who wish to opt

7

into the action.  <u>Dybach</u>, 942 F.2d at 1567-68.

    B.    <u>Analysis</u>

        *1.*   *Similarly-Situated Requirement*

Plaintiffs bear the burden of showing, under § 216(b), that they are "similarly situated" to the members of the putative class they seek to represent. <u>Grayson</u>, 79 F.3d at 1096.  As stated above, this burden is not a heavy one.  <u>See also</u> <u>id.</u> at 1095-96 ("[T]he 'similarly situated' requirement of § 216(b) is more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance).").  To satisfy the similarly-situated requirement, "plaintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members."  <u>Id.</u> at 1096 (internal quotation marks and citation omitted).  Additionally, "plaintiffs bear the burden of demonstrating a 'reasonable basis' for their claim of class-wide [FLSA violations]."  <u>Id.</u>  While "a unified policy, plan, or scheme of discrimination may not be required to satisfy" § 216(b)'s similarly-situated requirement, <u>id.</u> at 1095, a plaintiff "must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions."  <u>Marsh v. Butler</u>

Cnty. Sch. Sys., 242 F. Supp. 2d 1086, 1093 (M.D. Ala. 2003).

### a.    Plaintiffs' Evidence

Plaintiffs argue that the Court should certify three subclasses: (1) employees in all mortgage jobs at all MOCs whose nondiscretionary bonus payments were excluded from the calculation of overtime compensation; (2) employees in all mortgage jobs at the Gainesville MOC who worked off the clock and were not paid proper overtime compensation; and (3) employees in all mortgage jobs at the Gainesville MOC whose time records were falsified and who were not paid proper overtime compensation. (Third Am. Compl., Dkt. [41] ¶ 65.) Plaintiffs assert that all class members had the same primary job duties, were compensated in the same way, and worked overtime. Furthermore, Defendants used the same unlawful overtime practices against them. (See id. ¶ 122.)

In support of these allegations, Plaintiffs produce several declarations from Plaintiffs and other employees. According to these employees, "[a]t various times" throughout their employment they "worked in excess of 40 hours in a workweek"; Defendants were aware when they worked extra hours "because such work was apparent from documents, including electronic

documents, or was performed in plain sight of management"; and "[at] various times" Defendants did not pay them for all the overtime hours worked in a workweek.  (Colbert, Nesmith, Wick, & Wilson Decls., Dkt. [45-6, 45-7, 45-8, 45-9] ¶¶ 19-21.)  The declarants state that Defendants failed to calculate overtime compensation properly by excluding nondiscretionary bonuses from the regular rate of pay.  (Id. ¶ 21.)  They also state that "[a]t various times" they "worked off-the-clock during lunch breaks and before and after regular business hours."  (Id. ¶ 22.)  Furthermore, two employees state that "REGIONS' managers could enter the timekeeping system to change the time records or enter new information into the time records of a [mortgage underwriter, processor, or closer] in order to decrease the amount of [their] compensable hours."  (Colbert & Nesmith Decls., Dkt. [45-6, 45-7] ¶ 17.) Defendants routinely engaged in these practices and consequently underpaid employees' overtime compensation.  (See Colbert, Nesmith, Wick, & Wilson Decls., Dkt. [45-6, 45-7, 45-8, 45-9] ¶ 23.)  Plaintiffs thus argue that the class members are all similarly situated.

### b.      Defendants' Contentions

In opposing conditional certification, Defendants stress that Plaintiffs'

off-the-clock claims are inherently individualized, and the subclasses fail to remedy this problem.  (See Defs.' Resp., Dkt. [75] at 11-12.)  According to Defendants, the factual determinations as to each opt-in would be unique.  (Id. at 12-13.)  What is more, Plaintiffs and the putative opt-ins held three different jobs with different duties, while the extent to which employees worked overtime depended on the position they held.  (Id. at 14-16.)  Defendants point to several other issues, including that Plaintiffs had different supervisors who approved overtime hours; Defendants had policies requiring accurate timekeeping and prohibiting work off the clock; and Plaintiffs' allegations are vague and conclusory because none of the declarations specifies when or how often the employee worked off the clock, nor do they identify any policy requiring work off the clock.  (See id. at 17-20.)  Finally, Defendants note that there is evidence Plaintiffs were paid for a substantial number of overtime hours, meaning numerous individualized questions exist about why each Plaintiff was not paid for certain overtime hours.  (Id. at 20-21; Pearce Decl., Dkt. [75-5] ¶ 21.)

As for the time-falsification claims, Defendants deny that Plaintiffs and opt-ins are similarly situated because only two declarants mention that their

11

time records were falsified.  (See Colbert & Nesmith Decls., Dkt. [45-6, 45-7] ¶

23.)  Moreover, Defendants point out that neither one states who falsified their

records, only that managers could change the time records in the time keeping

system.  (Id. ¶ 17.)  Defendants also argue that resolving time-falsification

claims would involve individual inquiries into each class member's pay

discrepancies to identify whether anyone altered time records to reduce

overtime pay.  (See Defs.' Resp., Dkt. [75] at 23-24.)

Last, Defendants argue that certification is improper for the subclass of

employees whose bonuses were excluded from their regular pay-rate

calculation because all three Plaintiffs' regular rates were properly calculated to

include non-discretionary bonuses.  (Id. at 26; Pearce Decl., Dkt. [75-5] ¶¶ 16-

17.)

### c.    Certification

After reviewing the Third Amended Complaint and the parties'

submissions, the Court finds that Plaintiffs make an adequate showing of

similarity at this stage to warrant conditional certification as to certain claims.

First, the Court finds that the mortgage processors, mortgage underwriters, and

mortgage closers are similarly situated in terms of their job duties and pay

provisions.  Although there is variation in the duties of the different positions, all putative class members had non-supervisory mortgage jobs at Defendants' MOCs.  More importantly, Defendants state that "MOC employees"—presumably including all putative class members—were all non-exempt and were paid at an hourly rate plus non-discretionary bonus payments.  (Pearce Decl., Dkt. [75-5] ¶¶ 5, 16-17.)  Policies violating the FLSA could thus affect employees in the same way.  Even though the job duties among the different mortgage jobs vary, "variations in specific duties, job locations, working hours, or the availability of defenses are examples of factual issues that are not considered at this stage."  Scott v. Heartland Home Fin., Inc., No. 1:05-CV-2812-TWT, 2006 WL 1209813, at *3 (N.D. Ga. May 3, 2006).  For that reason, the Court finds that Plaintiffs make a sufficient showing that members of the putative class are similarly situated in terms of their job and pay provisions.

Turning to Plaintiffs' first subclass, which includes mortgage employees at all MOCs, Plaintiffs allege they were subject to a common unlawful policy when Defendants excluded their bonuses from the calculation of their regular pay rate.  However, Defendants submitted evidence that Plaintiffs were paid a "true up" payment in March 2013 that compensated them for overtime based on

13

a rate of pay that included production bonus payments. (Defs.' Resp., Dkt. [75] at 26; Pearce Decl., Dkt. [75-5] ¶¶ 18-19). Thereafter, Defendants have included the production bonus in the regular pay rate used to calculate overtime payments. (Id. ¶¶ 16-17). In their Reply, Plaintiffs assert that even if there were a "true up" payment, it went only to current employees and did not address former employees. (Pl.'s Reply [81] at 3, n.1). Plaintiffs do not represent that they did not receive the payment. Therefore, the Court finds that Plaintiffs are not similarly situated to these putative members of the class that they seek to represent. While the Court would not typically consider merits at this stage of certification, the substantial number of potential plaintiffs who would have to be served with notice and yet, who appear not to have valid claims causes the Court to consider the merits at this time. Inclusion of this claim would require notice to be sent to hundreds of employees in Alabama, Indiana, Tennessee, Florida, and Mississippi, and apparently, those who have been employed since March 2013, would not have valid claims. In light of these circumstances and Plaintiffs appearing not to be similarly situated to putative plaintiffs who may have a claim, certification of Plaintiffs' first subclass is **DENIED**.

The Court next considers the other two proposed subclasses, consisting

of mortgage employees at the Gainesville MOC (1) who worked off the clock in excess of 40 hours per week and (2) whose time records were altered to reduce the number of compensable overtime hours.  Most of Defendants' objections to certification apply to these subclasses and how the Court would have to make independent inquires into each employee's records to determine liability and damages.

The Court recognizes Defendants' concern that distinct proofs could be required to determine liability for each class member.  Defendants submit several affidavits of employees who state they were paid all their overtime.  But again, resolving these factual disputes is not appropriate at this stage.  See, e.g., Kreher, 2006 WL 739572, at *4 (noting that the focus of the first stage "is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated" (quoting Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54-55 (S.D.N.Y. 2005))).  Instead, the Court finds that at this stage Plaintiffs have produced sufficient evidence that putative class members experienced the same FLSA violations.

The cases Defendants cite do not alter this conclusion.  Defendants cite

15

<u>Williams v. Accredited Home Lenders, Inc.</u> in arguing that certification of this class is improper.  No. 1:05-CV-1681-TWT, 2006 WL 2085312 (N.D. Ga. July 25, 2006).  In that case, the plaintiffs sought certification of a class of one thousand current and former loan officers seeking unpaid overtime.  <u>Id.</u> at *1. The plaintiffs had worked off the clock and were told they would receive "comp time" for their overtime hours.  <u>Id.</u> at *2.  The court denied certification of a collective action because liability of the plaintiffs' off-the-clock claims could not be determined on a class-wide basis.  <u>Id.</u> at *4.  The court explained that "there must be a fact-specific, individualized inquiry into each Plaintiff's day-to-day activities" because "every employee must testify about his awareness of the overtime policy, and his violation of that policy—and whether it was compelled by his or her branch manager."  <u>Id.</u>

Defendants argue that the same is true here.  But in <u>Williams</u>, the court skipped the first stage of conditionally certifying the class and instead proceeded with a factual determination of the similarly-situated question.  The court did so because the plaintiffs had "short circuited the process first by disseminating informal notice of the lawsuit," then about 150 current or former employees filed forms to opt in, the defendant deposed about 20 of the opt-in

16

plaintiffs, and the plaintiffs deposed the defendant's senior managers.  Id.  The

defendants also submitted declarations of 50 loan officers testifying that they

always accurately recorded their hours and had been properly paid.  Id. at *4.

Here, although there are several declarations in the record, the Court does not

have the benefit of discovery to make a final certification decision.  Discovery

could reveal factual circumstances that could make the liability question

suitable for a collective action.

Williams is further distinguishable because the plaintiffs there sought a

nationwide collective action, and so the court found that such a case would be

unmanageable because it would involve hundreds of overtime claims from

many different offices around the country with different supervisors.  See id. at

*5.  Here, by contrast, Plaintiffs limit their off-the-clock and time-falsification

claims to Gainesville MOC employees only, thus greatly narrowing the scope

of the class.  Based on Plaintiffs' allegations and evidence, it is plausible

Plaintiffs could prove Defendants had a common policy at the Gainesville

MOC of ordering employees to work off the clock and of altering their

recorded hours to reduce their overtime pay.  Cf. Randle v. Allconnect, Inc.,

No. 1:14-cv-245-WSD, 2014 WL 1795184, at *4 (N.D. Ga. May 6, 2014)

(conditionally certifying a class when plaintiffs showed sufficient evidence that they "were subject to a common practice of not being paid for all hours worked in excess of forty hours per week based on work they were required to perform off-the-clock").

In Hart v. JPMorgan Chase Bank, N.A., another case Defendants cite, the court declined to certify a collective action "of hundreds or thousands of current and former JP Morgan employees based on divergent 'off the clock' violations" with "varying factual circumstances including geography, line of business, supervisors and managers, duties, and time keeping and pay practices." No. 8:12-cv-00470-T-27TBM, 2012 WL 6196035, at *1 (M.D. Fla. Dec. 12, 2012). There, too, the court found that many plaintiff-specific inquiries would be required. Id. at *5. Here, on the other hand, Plaintiffs and putative class members all worked at the Gainesville MOC, they were in the same general line of business, and they were subject to the same time keeping and pay practices. Even though they may have reported to different supervisors, those supervisors all worked at one location—the Gainesville MOC—thus minimizing the differences between putative opt-ins. More importantly, the plaintiffs and declarants in Hart "each complain[ed] of widely

18

divergent 'off-the-clock' violations" resulting from different practices.  Id.  In this case, all class members allege the same core violation: Defendants failed to pay overtime by requiring employees to work off the clock and/or by falsifying time records to reduce overtime pay.

In sum, the above cases either had the benefit of more evidence or involved class members who were clearly not similarly situated to one another in terms of pay, duties, or even alleged FLSA violations.  In this case, because Plaintiffs do show the class members are similarly situated, it is more appropriate to evaluate the manageability of the class's claims after the Court has the benefit of discovery.  See Morgan, 551 F.3d at 1261 (explaining that procedural considerations are factored into the court's decision at the second stage); Kreher, 2006 WL 739572, at *4 n.8 (stating that the court would consider the individualized nature of plaintiffs' off-the-clock claims at the second stage).  Therefore, the Court finds that Plaintiffs' case is appropriate for conditional certification as to these claims.

   2.   Subclasses

Defendants argue that the proposed subclasses are inappropriate, however, because they do not remedy the individualized inquiries required in

this case.  As explained above, at this stage the Court finds that the putative

class members are similarly situated.  Still, the Court notes that the proposed

subclasses would not aid in the resolution of claims because they are largely

overlapping.  For example, some Gainesville MOC employees could be

members of both remaining subclasses if they experienced both types of FLSA

violations. Consequently, the Court finds that the use of subclasses is not

appropriate and **DECLINES** to establish subclasses. The Court finds that the

class should be defined as follows:

> All current and former employees of REGIONS BANK and/or
> REGIONS FINANCIAL CORPORATION at the Gainesville,
> Georgia mortgage operations center, including the Commerce,
> Georgia satellite office, who performed the primary job duties of
> either a mortgage processor, mortgage underwriter, or mortgage
> closer, at any time from [three years prior to the mailing date of
> notice] to [date of notice], who did not receive all the overtime
> compensation legally owed them because REGIONS BANK
> and/or REGIONS FINANCIAL CORPORATION:
>
> 1.    Altered employees' time records by entering
>       inaccurate clock-in and clock-out times to reduce the
>       amount of overtime hours actually worked; and/or
>
> 2.    Required employees to work off the clock in order to
>       complete assignments but did not pay for the off-the-
>       clock time worked.

###### 3.    *Others Desire to Join the Suit*

Beyond demonstrating that other members of the putative class are similarly situated, Plaintiffs must also demonstrate that other employees wish to opt in before the Court will grant conditional certification.  Dybach, 942 F.2d at 1567-68.  Three opt-ins have already filed consents to join the three named Plaintiffs.  (See Dkt. [8, 12-1, 12-3].)  The Court has granted conditional certification based on a showing of as few as two opt-ins wishing to join a collective action.  See Reece v. United Home Care of N. Atlanta, Inc., No. 1:12-CV-2070-RWS, 2013 WL 895088, at *4 (N.D. Ga. Mar. 8, 2013) (certifying class with two opt-ins); Riddle v. SunTrust Bank, No. 1:08-CV-1411-RWS, 2009 WL 3148768, at *3 (N.D. Ga. Sept. 29, 2008) (certifying class with three opt-ins).

Defendants further argue that Plaintiffs fail to demonstrate employees from MOCs other than the Gainesville MOC are interested in joining.  Based on the Court's denial of certification of a class including employees from MOCs other than the Gainesville MOC, geographic diversity is no longer an issue. Accordingly, the lack of geographic diversity of the opt-ins does not defeat certification.  Plaintiffs sufficiently demonstrate that others wish to join

21

the litigation.

>    4.    *Notice*

Defendants object to Plaintiffs' proposed single notice (Dkt. [45-2])

because one subclass includes all MOC employees while the others include

Gainesville MOC employees only.  Based on the Court's decision to certify the

claims of Gainesville MOC employees only, Defendants' concern is removed.

Plaintiffs are **DIRECTED** to prepare a notice defining the class as defined in

this Order. Otherwise, the proposed notice is approved.

Plaintiffs request permission to include the following legend on the front

of each envelope containing a notice packet:

>          LEGAL NOTICE:
> UNPAID OVERTIME LAWSUIT AGAINST:
> REGIONS BANK and/or REGIONS FINANCIAL CORPORATION
>      •      You could get additional overtime pay for some of the
>             hours you worked.
>      •      Your prompt attention is required.

(Dkt. [45-4].)  Plaintiffs also request permission to include in the notice packet

a postage-paid return envelope pre-addressed to Plaintiffs' counsel.  (Pls.' Br.,

Dkt. [45-1] at 23.)  Defendants do not object to either request.  The Court will

permit Plaintiffs to print the legend on each envelope and to include a return

envelope with the notice packet.

For all these reasons, Plaintiffs' Motion for Conditional Certification [45] is **GRANTED, in part and DENIED, in part**.

## II.   Motion for Judgment on the Pleadings

Next, the Court addresses Defendants' Motion for Judgment on the Pleadings [63] as to Plaintiffs' Georgia RICO claims.

### A.   Legal Standard

"Judgment on the pleadings is appropriate where no issue of material fact remains unresolved and the moving party is entitled to judgment as a matter of law." Mergens v. Dreyfoos, 166 F.3d 1114, 1117 (11th Cir. 1999). "When reviewing judgment on the pleadings, [the Court] must take the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party." Id. A motion for judgment on the pleadings pursuant to Rule 12(c) may be premised on failure to state a claim. Mills v. Fitzgerald, 668 F. Supp. 1554, 1556 n.1 (N.D. Ga. 1987) (citing FED. R. CIV. P. 12(h)).

In order to determine whether a plaintiff has stated a claim, a federal court is to accept as true "all facts set forth in the plaintiff's complaint." Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (citation

omitted).  Further, the court must draw all reasonable inferences in the light

most favorable to the plaintiff.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-

56 (2007) (internal citations omitted); Bryant v. Avado Brands, Inc., 187 F.3d

1271, 1273 n.1 (11th Cir. 1999).  However, "[a] pleading that offers 'labels and

conclusions' or 'a formulaic recitation of the elements of a cause of action will

not do.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550

U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]'

devoid of 'further factual enhancement.'"  Id.

   B.   Analysis[1]

-------------------------------------------------------------------------------

[1]Plaintiffs filed a Motion for Leave to File a Five-Page Sur-Reply [100] and Amended Motion to File a Sur-Reply [102].  Generally, the filing of surreplies is improper, although the Court may allow a surreply in its discretion where a valid reason for additional briefing exists, such as when a movant raises new arguments in its reply brief or a party wishes to inform the Court of a new decision or rule implicating the motion under review.  See, e.g., Fedrick v. Mercedes-Benz USA, LLC, 366 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005).  Much of Plaintiffs' proposed surreply repeats arguments made (or which could have been made) in earlier briefing.  Plaintiffs also assert that a recent Eleventh Circuit case, Graham v. R.J. Reynolds Tobacco Co., 782 F.3d 1261 (11th Cir. 2015), sets forth a more definitive test for obstacle preemption.  In Graham, the court found that certain state strict-liability and negligence claims were preempted in light of Congress's efforts to regulate tobacco manufacturers.  See id. at 1284-85.  Graham, although thorough in its analysis, is not directly on point.  The parties covered the essential obstacle-preemption arguments in their briefs, and so the Court finds that a surreply is unnecessary.  Finally, to the extent Defendants raised new arguments in their Reply, the Court will not consider them.  Thus, Plaintiffs' Motion for Leave to File a Five-Page Sur-Reply [100] is **DENIED as moot**, and Plaintiffs' Amended Motion to File a Sur-Reply [102] is **DENIED**.

AO 72A
(Rev.8/82)

In support of their Georgia RICO claim, Plaintiffs allege that Defendants "have systematically taken and converted" the labor and services of their employees through the falsification of electronic time records "in order to decrease compensable hours in excess of 40 in a workweek while still obtaining essentially the same level of employee production."  (Third Am. Compl., Dkt. [41] ¶¶ 140-41.)  They also allege that Defendants denied them "all the overtime compensation due at 1.5 times their regular rate of pay for all work performed in excess of 40 hours in a workweek."  (Id. ¶ 121.) Defendants argue that Plaintiffs' Georgia RICO claim is preempted by the FLSA, and that, in any event, Plaintiffs fail to state a claim.

> 1.    *Preemption*

There are three categories of preemption: express preemption, field preemption, and conflict preemption.  Fla. State Conference of the NAACP v. Browning, 522 F.3d 1153, 1167 (11th Cir. 2008).  The parties agree that the only category at issue here is conflict preemption.  Conflict preemption occurs when it is impossible to comply with both federal and state law or when state law is an obstacle to the objective of a federal law.  Id.; see also Int'l Paper Co. v. Ouellette, 479 U.S. 481, 494 (1987) ("A state law also is pre-empted if it

AO 72A
(Rev.8/82)

interferes with the methods by which the federal statute was designed to reach [its] goal.").

The intent of the FLSA is "to protect all covered workers from substandard wages and oppressive working hours." Barrentine v. Ark.-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981). The FLSA thus provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The FLSA also establishes a broad enforcement scheme under which "[a]ny employer who violates the provisions of [the FLSA] . . . shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." Id. § 216(b). "Courts have consistently held that the above statute is the exclusive remedy for enforcing rights created under the FLSA." Tombrello v. USX Corp., 763 F. Supp. 541, 545 (N.D. Ala. 1991); see also Anderson v. Sara Lee Corp., 508 F.3d 181, 194 (4th Cir. 2007) (holding that "FLSA's enforcement scheme is an exclusive one").

26

2.      *The Parties' Contentions*

Defendants assert that conflict preemption bars the Georgia RICO claim

because Plaintiffs seek relief under state law based on the failure to pay proper

overtime wages, conduct that also violates the FLSA.  (Defs.' Br., Dkt. [63-1]

at 6-7.)  Georgia RICO also permits recovery of treble and punitive damages,

see O.C.G.A. § 16-14-6(c), whereas the FLSA only provides for unpaid

overtime and liquidated damages, see 29 U.S.C. § 216(b).  Defendants argue

that circumvention of the FLSA's exclusive remedial scheme conflicts with the

methods by which the FLSA was designed to reach its goals.  (See Defs.' Br.,

Dkt. [63-1] at 8-9.)

Plaintiffs respond that under Georgia RICO they seek only their straight-

time pay for hours worked over 40 per week, not the 50% premium the FLSA

requires employers to pay for overtime.  Because they are independently

entitled to straight-time pay under Georgia law,[2] Plaintiffs conclude that they

do not rely solely on FLSA rights to establish Georgia RICO liability.

Plaintiffs explain that they seek straight-time pay (for overtime hours) under

---

[2]Plaintiffs argue that they are entitled to straight-time pay based on a statutory
right to be paid all wages earned under O.C.G.A. § 34-7-2.

27

Georgia RICO and the 50% premium for overtime pay under the FLSA.  (See

Pls.' Resp., Dkt. [87] at 20.)  In effect, Plaintiffs split their overtime claims into

two components: (1) the regular rate and (2) the additional one-half times the

regular rate.

> 3.    *Analysis*

Courts hold that a state-law claim is preempted where it "depends on the

finding of a violation of the FLSA and requires the same proof as is required to

prove a violation of the FLSA, and the state law claim is only invoked to

expand a plaintiff's remedies."  Johnson v. WellPoint, Inc., No. 1:06-CV-2430-

ODE, 2009 WL 8753325, at *22 (N.D. Ga. Mar. 30, 2009); see also Anderson,

508 F.3d at 194 (finding that "contract, negligence, and fraud claims are

precluded under a theory of obstacle preemption" when a plaintiff uses these

claims to enforce rights under the FLSA).  By contrast, a state-law claim is not

preempted if it "seeks to recover wages for time that is compensable under [an

employment] contract though not under the FLSA."  Avery v. City of

Talladega, Ala., 24 F.3d 1337, 1348 (11th Cir. 1994).  In other words, because

"an employer may contractually agree to compensate employees for time that is

not mandatorily compensable under the FLSA," id., a plaintiff may bring a

state-law breach of contract claim to enforce those bargained-for rights not protected by the FLSA.  Similarly, states can enact more protective wage and hour laws, and employees can enforce those rights without running afoul of the FLSA.  See 29 U.S.C. § 218(a) ("No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum work week lower than the maximum work week established under this chapter . . . ."); Anderson, 508 F.3d at 193 (stating that the FLSA "expressly allows states to provide workers with more beneficial minimum wages and maximum workweeks than those mandated by the FLSA itself").

While the Court recognizes Plaintiffs' argument that their RICO claim is based solely on straight-time pay they are entitled to under Georgia law, the Court is unpersuaded that they are permitted to enforce that right separately from the 50% premium provided by the FLSA.  After all, the FLSA requires an employee to be compensated for overtime hours "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).  The Court is aware of no authority permitting a plaintiff to parse

29

FLSA-required overtime pay into components.  Although Plaintiffs assert that

their right to straight-time pay for overtime hours is independent of the FLSA,

at bottom they seek a portion of the time-and-a-half overtime-pay guaranteed

by the FLSA and therefore seek to remedy a violation falling within the

FLSA's scope.  In that sense, the right is not wholly independent of the FLSA;

it is overlapping.  But if Plaintiffs could recover treble and punitive damages

for the straight-time component of the time-and-a-half they are owed under the

FLSA, Plaintiffs would thwart Congress's exclusive remedy for FLSA claims

by essentially substituting part of their FLSA claim with a Georgia RICO

claim.  That is why numerous courts have found that state-law claims are

preempted when they "merely duplicate[] FLSA claims" or seek greater

damages than those available under the FLSA.  Anderson, 508 F.3d at 194

(collecting cases); see also DeSilva v. N. Shore–Long Island Jewish Health

Sys., Inc., 770 F. Supp. 2d 497, 512-19, 533 (E.D.N.Y. 2011) (Federal RICO

and state-law claims preempted); Gordon v. Kaleida Health, 847 F. Supp. 2d

479, 489-90 (W.D.N.Y. 2012) (same); Tombrello, 763 F. Supp. at 545 (state-

law claims preempted).

     In contrast, state-law claims to enforce rights not protected under the

FLSA are not preempted.  For example, the FLSA provides no remedy if an

employee is paid less than her actual hourly rate but in excess of the minimum

wage for non-overtime hours.  See, e.g., Thrower v. Peach Cnty., Ga. Bd. of

Educ., No. 5:08-CV-176 (MTT), 2010 WL 4536997, at *5 (M.D. Ga. Nov. 2,

2010) ("Although there is little direct authority, the few cases addressing gap

time have acknowledged that FLSA provides no remedy for a worker who has

received at least minimum wage for his or her nonovertime hours, even though

they may have been paid less than their actual hourly rate.").  In that regard,

courts have held that state-law claims are not duplicative of FLSA claims if the

"obligation to compensate plaintiffs for this work did not arise from

[defendants'] obligations under the FLSA, but instead arose from plaintiffs'

alleged employment contracts."  DeSilva, 770 F. Supp. 2d at 533.  In such a

situation, there is no conflict preemption because the employee seeks to enforce

a right under state law that the FLSA does not protect.  Thus, there is no danger

that permitting an employee to recover these straight-time wages for non-

overtime hours—as long as the employee is paid at least minimum

wage—"would thwart Congress's careful, comprehensive scheme to remedy

wage and hour violations falling within the FLSA's scope."  Gordon, 847 F.

Supp. 2d at 490.

The Court is also unpersuaded that Avery v. City of Talladega forecloses preemption under these circumstances.  In Avery, the Eleventh Circuit held that a breach of contract claim was not preempted when the contract expressly provided that employees would be compensated in accordance with the FLSA.  24 F.3d at 1348.  Therefore, the court found that the parties' intent "was to be bound by the terms of the FLSA, nothing more."  Id.  The court then said that if a violation of the FLSA occurred, then a violation of the contract occurred as well.  Id.  But the court clarified that "the plaintiffs may not recover twice for the same violation; the breach of contract claim survives merely as an alternative legal theory to redress any wrong that may have been done to them." Id.  Avery is thus distinguishable from this case because here Plaintiffs seek overtime damages beyond what the FLSA provides, whereas in Avery the court indicated that the plaintiffs could not receive a double recovery, nor did the plaintiffs seek damages as extensive as those under Georgia RICO.  Because it merely incorporated the terms of the FLSA, enforcing the contract did not conflict with the goals of the FLSA.

In sum, because Plaintiffs seek to enforce part of the overtime pay

32

required under the FLSA by using Georgia RICO, which permits recovery of more extensive damages, the Georgia RICO claims conflict with the FLSA, and it is impossible to comply with both statutes. Consequently, Plaintiffs' Georgia RICO claims are preempted and are due to be **DISMISSED**, and Defendants' Motion for Judgment on the Pleadings [63] is **GRANTED**.

### Conclusion

For the foregoing reasons, Plaintiffs' Motion for Leave to File a Five-Page Sur-Reply in Opposition to Defendants' Rule 12(c) Motion [100] is **DENIED as moot**, and Plaintiff's Amended Motion for Leave to File a Sur-Reply [102] is **DENIED**. In addition, Defendants' Motion for Judgment on the Pleadings [63] is **GRANTED**, and Plaintiffs' Georgia RICO claims are hereby **DISMISSED** from this action. Finally, Plaintiffs' Motion for Conditional Certification [45] is **GRANTED, in part and DENIED, in part**.

Plaintiffs are **DIRECTED** to prepare separate notices for the two subclasses consistent with Parts I.B.2 & 4 of this Order. Defendants are **ORDERED** to produce the names and addresses of all putative class members who worked for Defendants in a readily usable electronic format within 20 days of this Order. Defendants are also **ORDERED** to supply the last four

33

digits of the Social Security numbers for all putative class members.

**SO ORDERED**, this 28th day of August, 2015.

_____
**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)