# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### GAINESVILLE DIVISION

BETTY WILSON, *et al*.,      :
                       :

      Plaintiffs,          :
                       :

      v.               :       CIVIL ACTION NO.
                       :       2:14-CV-105-RWS

REGIONS FINANCIAL     :
CORPORATION, *et al*.,    :
                       :

      Defendants.        :

## ORDER

This case comes before the Court on Plaintiffs' Emergency Motion for Reconsideration [105] and Emergency Motion to Shorten Defendants' Response Time [106]. After reviewing the record, the Court enters the following Order.

## Background[1]

Plaintiffs bring this putative class action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., to recover unpaid overtime compensation. Defendants provide mortgage-loan services throughout the

---

[1] The Court fully set out the background of this case in its August 28, 2015 Order. (Dkt. [104].) The Court includes a nearly identical—but slightly abbreviated—background here to set the stage for deciding Plaintiffs' motions.

United States, including at a mortgage-operations center in Gainesville, Georgia, with a satellite location in Cumming, Georgia (collectively, "Gainesville MOC"). (Third Am. Compl., Dkt. [41] ¶¶ 48-51.) Defendants also operate mortgage-operations centers in Alabama, Indiana, Tennessee, Florida, and Mississippi. (Id.) Defendants employ individuals to work in three mortgage-related positions at all MOCs: (1) mortgage processor; (2) mortgage underwriter, and (3) mortgage closer. (Id. ¶¶ 52-57.)

The three named Plaintiffs in this action, Betty Wilson, Linda Wick, and Susan Colbert, worked at the Gainesville MOC. (Id. ¶ 60.) At various times from August 2000 until about April 2014, Wilson was employed as either a mortgage processor or mortgage underwriter. (Id. ¶ 62.) From September 2008 until sometime in 2013, Wick worked as a mortgage closer. (Id. ¶ 63.) Colbert was employed as a mortgage underwriter from June 2009 until around March 2014. (Id. ¶ 64.)

All employees who worked in any of the three mortgage-related positions at the MOCs, including Plaintiffs, were eligible for and were often paid nondiscretionary production bonuses for meeting production goals. (Id. ¶¶ 102-03.) All employees used an electronic timekeeping system to clock in and

2

clock out each day, including for lunch breaks, at the Gainesville MOC.  (Id. ¶¶ 111-13.)  At various times since May 20, 2009, Plaintiffs worked in excess of 40 hours in a workweek.  (Id. ¶ 115.)

Plaintiffs accuse Defendants of cheating them and other employees at both the Gainesville MOC and other MOCs out of their proper overtime pay in three ways:

(1) Defendants excluded *all MOC* employees' nondiscretionary bonus payments from the calculation of their regular rate of pay used to compute overtime compensation;

(2) Defendants required *Gainesville MOC* employees to work off the clock to complete their assigned tasks and refused to pay all overtime hours actually worked; and

(3) Defendants falsified *Gainesville MOC* employees' actual clock-in and clock-out times to decrease their compensable overtime hours.

(See id. ¶ 65.)

In view of these allegations, Plaintiffs sought conditional certification of a collective action consisting of three subclasses to recover unpaid overtime. (See Pls.' Renewed Mot. for Conditional Certification ("Pls.' Certification Mot."), Dkt. [45].)  On August 28, 2015, the Court issued an Order granting that motion in part and denying it in part.  (Dkt. [104].)  First, the Court granted

3

conditional certification of Plaintiffs' claims as to employees at the Gainesville MOC who: (1) worked off the clock in excess of 40 hours per week; and (2) whose time records were altered to reduce the number of compensable overtime hours.  (Id. at 19.)  Second, the Court denied conditional certification of the claim as to employees at all MOCs whose bonuses were excluded from the calculation of their regular pay rate used to calculate overtime pay.  (Id. at 14.)  In denying certification of this bonus-overtime claim, the Court found that there were a substantial number of putative class members who appeared not to have valid claims.  (Id.)  This finding was based on the declaration of Brenda Pearce, the Corporate Payroll Manager at Defendant Regions Bank.  (Id.)  Ms. Pearce indicated that around March 15, 2013, Defendants paid all eligible MOC employees—including Plaintiffs—a "true up" payment that compensated them for past overtime based on a rate of pay that included production bonus payments.  (Pearce Decl., Dkt. [75-5] ¶¶ 18-19.)  She also indicated that, after March 15, 2013, Defendants began properly including employees' production bonuses in the regular pay rate used to calculate their overtime payments.  (Id. ¶¶ 16-17, 19.)  Based on this declaration, the Court reasoned that: (1) putative class members who received the "true up" payment no longer had valid bonus-

4

overtime claims; and (2) Plaintiffs were not similarly situated to those that did not receive the payment because, unlike them, Plaintiffs did receive the payment.

Plaintiffs now ask the Court to reconsider its denial of conditional certification of their bonus-overtime claim.  (See Pls.' Mot. for Recons., Dkt. [105].)  In short, they argue that the Court committed a clear error of law by ruling that Plaintiffs and the putative class members did not have valid bonus-overtime claims due to the "true up" payment.  (Id.)

## Discussion

### I.    Legal Standard

Under the Local Rules of this Court, "[m]otions for reconsideration shall not be filed as a matter of routine practice[,]" but rather, only when "absolutely necessary."  LR 7.2(E), N.D. Ga.  Such absolute necessity arises where there is "(1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact."  Bryan v. Murphy, 246 F. Supp. 2d 1256, 1258-59 (N.D. Ga. 2003).  A motion for reconsideration may not be used "to present the court with arguments already heard and dismissed or to repackage familiar arguments to test whether the

AO 72A
(Rev.8/82)

court will change its mind." Id. at 1259.  Nor may it be used "to offer new legal theories or evidence that could have been presented in conjunction with the previously filed motion or response, unless a reason is given for failing to raise the issue at an earlier stage in the litigation." Adler v. Wallace Computer Servs., Inc., 202 F.R.D. 666, 675 (N.D. Ga. 2001).  Finally, "[a] motion for reconsideration is not an opportunity for the moving party . . . to instruct the court on how the court 'could have done it better' the first time." Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995), aff'd, 87 F.3d 1242 (11th Cir. 1996).

## II.    Analysis[2]

Plaintiffs argue that the Court committed a clear error of law when it denied conditional certification of Plaintiffs' bonus-overtime claim.  To fully examine whether this is true, the Court must conduct two inquiries.  First, it must ask whether it was correct in concluding that Defendants' "true up" payment invalidated Plaintiffs' bonus-overtime claim.  If it was correct, then the inquiry ends there.  But if the Court committed an error, then it must ask

---

[2] As an initial matter, Plaintiffs' Emergency Motion to Shorten Defendants' Response Time [106] is **DENIED as moot** because Plaintiffs' Emergency Motion for Reconsideration [105] is already fully briefed and submitted.

6

whether the bonus-overtime claim meets the requirements of conditional

certification.

> A.   Did the "True Up" Payment Invalidate the Bonus-Overtime
>       Claim?

The crux of Plaintiffs' argument is that—despite the Court's previous

holding—Defendants' "true up" payment did not extinguish Plaintiffs' bonus-

overtime claim because Plaintiffs are still entitled to liquidated damages.  This

argument stems from 29 U.S.C. § 216(b), which provides:

> Any employer who violates the provisions of section
> 206 or section 207 of this title shall be liable to the
> employee or employees affected in the amount of
> their unpaid minimum wages, or their unpaid
> overtime compensation, as the case may be, and in an
> additional equal amount as liquidated damages.

29 U.S.C. § 216(b).  Plaintiffs take this to mean that even if Defendants' "true

up" payment covered the past overtime pay owed to Plaintiffs and other

putative class members, it did not account for liquidated damages, so they are

entitled to additional recovery under § 216(b).

Indeed, courts addressing this issue directly have held that an employer's

tender of previously unpaid overtime wages does not extinguish the employee's

FLSA overtime claim to recover liquidated damages.  See e.g., Brooklyn Sav.

Bank v. O'Neil, 324 U.S. 697 (1945) (holding that employees did not waive

their right to liquidated damages under a predecessor version of § 216(b) when

they accepted late payment for overtime wages and signed a general release of

claims under the FLSA); Atlantic Co. v. Broughton, 146 F.2d 480 (5th Cir.

1944).[3]  In Broughton, the Fifth Circuit evaluated whether a contract of accord

and satisfaction as to the employer's debt to the employee extinguished

liquidated damages under a predecessor version of § 216(b).  The court

answered in the negative, holding that:

> Under this section, if an employer or any regular
> payment date fails to pay the full amount of . . .
> overtime compensation due an employee, there
> immediately arises an obligation upon the employer
> to pay the employee the difference between the wages
> paid and the wages due, plus an equal additional
> amount as liquidated damages; and the payment
> thereafter of the balance due as wages, even though
> made prior to suit, does not release the accrued
> liability for liquidated damages.

Id. at 482.  More recently, the Eleventh Circuit cited Broughton with approval,

noting that "the former Fifth Circuit held that liquidated damages are available

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the
Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the
former Fifth Circuit handed down before October 1, 1981.

8

under the act to an employee if the employer failed to pay wages or overtime on the regular payment date." Arroyave v. Rossi, 296 F. App'x 835, 836 (11th Cir. 2008) (citing Broughton, 146 F.2d at 482). Similarly, the Eleventh Circuit has held that there are only two ways for employees to settle or compromise their back wage claims under the FLSA: (1) through supervision of the Department of Labor; and (2) through the district court's approval of a proposed settlement. Lynn's Food Stores, Inc. v. U.S., 679 F.2d 1350, 1352-53 (11th Cir. 1982). Outside these two scenarios, no payment or settlement can extinguish an employee's right to liquidated damages. Id. at 1355.

Defendants do not respond to Plaintiffs' reliance on these precedents. Instead, they argue that Plaintiffs' motion is improper because they never pled or sought conditional certification on the grounds that they are owed liquidated damages on untimely paid overtime wages. (Defs.' Resp. to Pls.' Mot. to Reconsider ("Defs.' Resp."), Dkt. [114] at 2.) In essence, Defendants argue that the Court cannot grant Plaintiffs' motion because Plaintiffs now seek, through reconsideration, conditional certification of a different claim for a different group. (Id. at 7.)

But as Plaintiffs point out, their demand for liquidated damages is

nothing new.  To begin, the Third Amended Complaint shows that Plaintiffs

sought liquidated damages in relation to the bonus-overtime claim.  It

establishes a subclass relating to that claim as follows:

### **SUB-CLASS #1**
*Unpaid Bonus-Rate Time – All MOCs*

**(a)**  Worked at ***either***:
the Gainesville MOC,
***or***
the AL-IN-TN MOCs,
***or***
the FL-MS MOCs,
***AND***

**(b)**  Had non-discretionary production bonus
payments *excluded* from the calculation of the
regular rate of pay used to compute their proper
overtime compensation required by federal law.

(Third Am. Compl., Dkt. [41] ¶ 65.)  It then, in two separate locations,

expressly requests liquidated damages for Plaintiffs and this bonus-overtime

subclass.  (Id. ¶¶ 189, 194.)  Perhaps more importantly, Plaintiffs sought

conditional certification of the bonus-overtime claim with liquidated damages

in mind.  In their motion, Plaintiffs describe the bonus-overtime subclass in

terms that are nearly identical to the description offered in the Third Amended

Complaint:

AO 72A
(Rev.8/82)

### *Sub-Class No. 1*

> All Mortgage Jobs Employees in All MOCs—
> Whose non-discretionary production bonus
> payments were excluded by defendants from the
> pay-rate calculation used to compute the putative
> members' overtime compensation, as proven by
> the defendants' own records.

(Pls.' Certification Mot., Dkt. [45-1] at 3.)  They then tie this bonus-overtime

subclass to the recovery of liquidated damages, noting that "[a]ny employer

that violates § 207(a)(1) is liable for all unpaid overtime compensation plus an

equal amount as liquidated damages."  (Id. at 12.)  Thus, the Court is

unconvinced that Plaintiffs never pled or sought conditional certification on the

grounds that they are owed liquidated damages.  The Third Amended

Complaint [41] and Plaintiffs' Renewed Motion for Conditional Certification

[45] expressly refute Defendants' position.

At bottom, the Court agrees with Plaintiffs that it committed a clear error

of law.  In reaching its decision on the bonus-overtime claim, the Court went

beyond the typical first phase of the certification process and considered the

merits of Plaintiffs' claim.  In doing so, the Court incorrectly concluded that

AO 72A
(Rev.8/82)

Defendants' "true up" payment stripped Plaintiffs of their bonus-overtime claim.  Under the language of § 216(b) and the case law interpreting that statute, Defendants' "true up" payment had no impact on Plaintiffs' right to liquidated damages.  Thus, the Court committed a clear error of law when it concluded that a substantial number of potential bonus-overtime class members appeared not to have valid claims.

### B.   Does the Bonus-Overtime Claim Meet the Requirements of Conditional Certification?

Even though the Court incorrectly concluded that a substantial number of the bonus-overtime claims were invalid, the Court cannot conditionally certify that claim unless it meets certain requirements.  The Eleventh Circuit has held that to conditionally certify a class under § 216(b), the Court must determine: (1) whether the employees sought to be included in the putative class are "similarly situated" with respect to their job requirements and pay provisions; and (2) whether there are other employees who wish to opt into the action."  Dybach v. State of Fla. Dep't of Corrections, 942 F.2d 1562, 1567 (11th Cir. 1991).

Beginning with the first requirement, the Court previously found that

Plaintiffs were not similarly situated to any putative bonus-overtime class members that did not receive Defendants' "true up" payment because it appeared that Plaintiffs indeed received that payment.  (Dkt. [104] at 14.) While that distinction appeared important at the time, it is now clear that it is not.  The impact of the "true up" payment goes to the merits of Plaintiffs' bonus-overtime claim, which the Court will not consider at this time.  Thus, Plaintiffs' receipt of that payment would not impact whether they are similarly situated to the putative bonus-overtime class members for purposes of conditional certification.

To satisfy the similarly situated requirement, "plaintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members."  See Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d 1208, 1217 (11th Cir. 2001) (internal quotation omitted); Grayson v. K Mart Corp., 79 F.3d 1086, 1095-96 (11th Cir. 1996) (holding that "the 'similarly situated' requirement of § 216(b) is more elastic and less stringent than the requirements" for joinder and severance).

Plaintiffs have met that burden.  The Court previously held that "Plaintiffs make a sufficient showing that members of the putative class are

13

similarly situated in terms of their job and pay provisions." (Dkt. [104] at 13.)

That is still true. The only reason the Court previously found that Plaintiffs

were not similarly situated as to the bonus-overtime claim was that it was

concerned about Plaintiffs' receipt of the "true up" payment. Having

eliminated that concern, the Court concludes that Plaintiffs are indeed similarly

situated to members of the putative bonus-overtime class.

Turning to the opt-in requirement, Plaintiffs must show that there are

other employees who wish to opt into the action. <u>Dybach</u>, 942 F.2d at 1567.

Three opt-ins have already filed consents to join the three named Plaintiffs.

(<u>See</u> Dkt. [8, 12-1, 12-2].) Defendants previously argued that, because these

three opt-ins come only from the Gainesville MOC, Plaintiffs fail to

demonstrate that employees from other MOCs are interested in joining. (Defs.'

Br. in Opp'n. to Pls.' Mot. for Conditional Certification ("Defs.' Certification

Resp."), Dkt. [75] at 10.) But the geography of these opt-ins is not

problematic. This Court has held that "[d]emonstrating interest from

individuals in several facilities, states, or regions is not a requirement for

conditional class certification. Plaintiff must show that *others* desire to opt-in."

<u>Reece v. United Home Care of North Atlanta, Inc.</u>, No. 1:12-CV-2070-RWS,

2013 WL 895088, at *4 (N.D. Ga. Mar. 8, 2013).  Likewise, in <u>Riddle v.</u>

<u>Suntrust Bank</u>, No. 1:08-CV-1411-RWS, 2009 WL 3148768, at *3 (N.D. Ga.

Sept. 29, 2009), this Court found that the named plaintiff and three opt-ins

(collectively representing three facilities in Georgia, Tennessee, and Florida)

demonstrated a sufficient showing of interest to conditionally certify a class

covering 1700 SunTrust bank locations across the entire Southeast region.

Here, Plaintiffs seek to represent a putative class covering only seven

MOCs.  (Third Am. Compl., Dkt. [41] ¶¶ 46, 48, 50.)  If the opt-ins in <u>Reece</u>

and <u>Riddle</u> were sufficient for the Court to certify the claims in those cases,

then the three opt-ins here are also sufficient.  Moreover, it appears from Ms.

Pearce's declaration that all MOC employees' overtime pay was calculated in a

uniform manner.  (<u>See</u> Pearce Decl, Dkt. [75-5] ¶¶ 13-17, 20.)  Thus, it is

unclear why geographic diversity among the opt-ins is important here.  With

three opt-ins already joining the named Plaintiffs, Plaintiffs have carried their

burden to show that there are other employees who wish to opt-in.

Thus, Plaintiffs meet all the requirements necessary to conditionally

certify their bonus-overtime claim.  Accordingly, that claim is hereby certified

and Plaintiffs' Emergency Motion for Reconsideration [105] is **GRANTED**.

15

C.      Time Frame for the Bonus-Overtime Class

Defendants make one additional argument: they claim that the bonus-overtime class should be limited in time because the "true up" payment marked the end of the time frame for the bonus-overtime claim. In other words, the bonus-overtime class should be limited to claims accruing before March 15, 2013, because that is the date Defendants stopped miscalculating their employees' regular rate of pay. (Defs.' Resp., Dkt. [114] at 7.) Plaintiffs, on the other hand, argue that the Court should conditionally certify the bonus-overtime claim as originally proposed—with a time frame extending up to the date of notice. They offer two reasons why. First, they claim there were at least two instances following March 15, 2013, when Defendants improperly calculated employees' regular rate of pay. (Pls.' Reply Br., Dkt. [115] at 15.) Second, they argue that it undermines the very purpose of conditional certification—allowing merits discovery—to cut off the time frame at March 15, 2013. (Id. at 16.)

The Court agrees with Plaintiffs. The conditional certification stage is too early to place limits on Plaintiffs' bonus-overtime claim based on the "true up" payment. The Court recognizes that Ms. Pearce's declaration claims that

Defendants began properly calculating the mortgage employees' regular rate of pay beginning immediately after the "true up" payment. (Pearce Decl., Dkt. [75-5] ¶ 20.)  But it cannot ignore the pay records Plaintiffs present, which seem to show discrepancies in Defendants' regular rate of pay calculations even after the "true up" payment.  (See Wilson & Wick Pay Records, Dkt. [115-5, 115-6].)  Importantly, Defendants do not deny that they made miscalculations in these post-March 15, 2013 pay records.  Instead, Plaintiffs claim that these were isolated errors and are insufficient to justify national certification of Plaintiffs' bonus-overtime claim for any period after March 15, 2013.  (Defs.' Resp. Br., Dkt. [114] at 8.)

    The difficulty with Defendants' argument is that it overlooks an essential aspect of conditional certification: it triggers discovery.  During discovery, the parties will have the opportunity to develop evidence as to Defendants' regular rate of pay calculations following the "true up" payment.  Without the benefit of discovery, and in light of the pay records Plaintiffs have already presented, the Court will not limit Plaintiffs' bonus-overtime claim to conduct occurring before March 15, 2013.  If it did, the Court would be limiting conditional certification based on the perceived merits of Plaintiffs' claim, which courts

AO 72A
(Rev.8/82)

typically avoid.  See Pares v. Kendall Lakes Auto., LLC, No. 13-20317-CIV, 2013 WL 3279803, at *4 (S.D. Fla. June 27, 2013 ) ("[C]ourts do not review the underlying merits of the action" when deciding whether to conditionally certify a proposed class for notification purposes only).  Thus, the bonus-overtime claim is conditionally certified as originally proposed.

> D.    Subclasses

The Court previously declined to create subclasses, finding that they were unnecessary because the two conditionally certified claims were largely overlapping.  The claims were limited to employees at the Gainesville MOC and some of those employees could have joined the class to pursue both claims. (Dkt. [104] at 20.)  But in light of its certification of the bonus-overtime claim, which impacts employees from all MOCs, the Court now establishes two subclasses.

The first subclass will encompass only the Gainesville MOC employees, and will include Plaintiffs' bonus-overtime claim as well as the two others previously certified.  It should be defined as follows:

> All current and former employees of REGIONS
> BANK and/or REGIONS FINANCIAL
> CORPORATION at the Gainesville, Georgia

mortgage operations center, including the Commerce, Georgia satellite office, who performed the primary job duties of either a mortgage processor, mortgage underwriter, or mortgage closer, at any time from [three years prior to the mailing date of notice - time tolled] to [date of notice], who did not receive all the overtime compensation legally owed them because REGIONS BANK and/or REGIONS FINANCIAL CORPORATION:

1. Underpaid employees' overtime by not including bonus payments in the computation of the rate-of-pay used for calculating overtime; and/or

2. Altered employees' time records by entering inaccurate clock-in and clock-out times to reduce the amount of overtime hours actually worked; and/or

3. Required employees to work off the clock in order to complete assignments but did not pay for the off-the-clock time worked.

The only difference between this definition and the one in the Court's August 28, 2015 Order [104] is that it adds the bonus-overtime claim and reflects the tolling of the statute of limitations.

The second subclass will encompass all MOC employees, but will include only Plaintiffs' bonus-overtime claim. It should be defined as follows:

19

> All current and former employees of REGIONS
> BANK and/or REGIONS FINANCIAL
> CORPORATION at any mortgage operations center,
> who performed the primary job duties of either a
> mortgage processor, mortgage underwriter, or
> mortgage closer, at any time from [three years prior to
> the mailing date of notice - time tolled] to [date of
> notice], who did not receive all the overtime
> compensation legally owed them because REGIONS
> BANK and/or REGIONS FINANCIAL
> CORPORATION underpaid employees' overtime by
> not including bonus payments in the computation of
> the rate-of-pay used for calculating overtime.

Without these subclasses, the class would either be overinclusive or underinclusive because it would: (1) extend the originally certified claims to non-Gainesville MOC employees; or (2) limit the Gainesville MOC employees to only the bonus-overtime claim.  Thus, establishing these subclasses is necessary to the efficient management of this case.  Plaintiffs must, of course, issue two separate notices: one to all Gainesville MOC employees and a second to all non-Gainesville MOC employees. Unless Defendants object within 7 days of the entry of this Order, the notices attached as Exhibits 9 [115-9] and 10 [115-10] to Plaintiffs' Reply Brief [115] are approved, in form, as the notices to be sent to putatuive class members.

**Conclusion**

For the foregoing reasons, Plaintiffs' Emergency Motion to Shorten Defendants' Response Time [106] is **DENIED as moot** and Plaintiff's Emergency Motion for Reconsideration [105] is **GRANTED**.  The portion of the Court's August 28, 2015 Order [104] denying Plaintiffs' Motion for Conditional Certification [45] as to the bonus-overtime claim and declining to establish subclasses is **VACATED**.  Plaintiffs' bonus-overtime claim is now conditionally certified.  The Court establishes two subclasses as defined in Part II.D., *supra*.  The rest of the Court's Order [104] stands.

Unless Defendants object within 7 days of the entry of this Order, the notices attached as Exhibits 9 [115-9] and 10 [115-10] to Plaintiffs' Reply Brief [115] are approved, in form, as the notices to be sent to putative class members. Defendants are **ORDERED** to produce the names and addresses of all putative class members—for both subclasses—who worked for Defendants in a readily usable electronic format within 20 days of this Order.  Defendants are also **ORDERED** to supply the last four digits of the Social Security numbers for all putative class members.

**SO ORDERED**, this 22nd day of March, 2016.

_____

**RICHARD W. STORY**
United States District Judge